Mills　v.　Alexander.

ELIZABETH MILLS AND OTHERS v. ROBERT ALEXANDER AND OTHERS.

The mere return of a party to his native country does not operate an abandonment of a domicil he has acquired in a foreign country, unless there be an intention to change his domicil, and it rests on the party relying on the abandonment to prove it.

The fact that a party died *in itinere* on his return with his family to his native country, is not sufficient to create the presumption of abandonment of a domicil acquired elsewhere.

Where a party pleads certain special matter of defence, a Court may exclude evidence of other special defences.

Where an absent defendant was represented by a *curator ad hoc*, before the passage of Article 127, Hartley's Digest, and judgment is obtained against him, it must be held until reversed or annulled by competent authority as binding on him and his heirs.

A judgment cannot be impeached in a collateral action by proof that the person for, or against whom it is rendered, died before its rendition.

Where evidence does not ascertain the amount paid in a purchase, after lapse of time, it will be presumed that the purchase money was paid, and that the price was an adequate one.

Where one seeks to avil himself of the illegality of the contract of his ancestor, to recover land sold in his lifetime, he must restore the price and place the party against whom he asserts it in *statu quo*.

Error from Austin.　Tried below before Hon. J. H. Bell.

Trespass to try title by the plaintiffs, commenced 10th May, 1854, for the league of land granted to Willis Stanly, in 1831, as his headright.　The plaintiff Elizabeth claims as the surviving widow of Willis Stanly, deceased, and the others as his heirs.　The defendants demurred, pleaded not guilty, limitation, and that Willis Stanly died an alien, and that the plaintiffs were also aliens at the time of the death of their ancestor.

The land in controversy was granted to Willis Stanly in 1831 ; between that time and 1833, when he died, he sold the

land to different persons. He died in the winter of 1833, in the State of Louisiana, while on his way to his father's-in-law, in the State of Arkansas. At the time of his death he had with him some of his family, but whether or not all, is not shown by the evidence. On the trial, the defendants introduced the record of a decree in a suit by Horatio Chrisman, assignee of Hommedieu, v. John C. Watrous, curator of Willis Stanly, rendered at the November Term, 1839, of the District Court of Austin county, ordering said curator to make a deed to Chrisman, through whom most of the defendants claim, to thirty-two hundred and forty-four acres out of the headright of said Willis Stanly, and the deed made in pursuance thereof by the curator.

The Court charged the jury as follows:

" If Stanly, the original grantee of the land in controversy, left the country in 1832 or 1833, or 1834, with his family, and with the intention of abandoning the country, then his heirs are not entitled to recover the land in controversy in this suit, because the same did not pass to them by inheritance. Whether or not the ancestors of these plaintiffs left the country with the intention of abandonment is a question for the jury to determine from all the circumstances of the case. If he left the country with his family, and died out of the country, in the absence of further proof, the presumption of law would be, that he had abandoned the country; and such presumption could only be rebutted by proof that he had left the country intending to return; that he had preserved a home in the country, to which his family returned after his death; or by proof of other circumstances which would destroy the presumption of abandonment.

" The sale of the land by Stanly in the years 1831 or 1832, or 1833, was in contravention of law, but if he received payment for the land, from those now in possession, or from those from whom those now in possession claim, his heirs cannot invoke relief from the illegal contract as against those in pos-

session of the land, without offering to do justice to them by paying back the purchase money, which was the consideration for the original, illegal contract, and this rule of the law is binding on married women and minors. The contract between Stanly and Hommedieu was a contract, the illegality of which cannot now be inquired into, since the contract was sued on, and a decree of a Court of competent jurisdiction obtained enforcing the same, which decree is conclusive upon all parties concerned, and can only be attacked for fraud in the procurement of it." The remainder of the charge was in relation to the pleas of limitation.

There was a verdict for defendant and judgment from which the plaintiffs prosecuted a writ of error.

*N. Holland* and *G. W. Smith*, for plaintiffs in error. The first instruction is deemed erroneous, because it is misleading in its nature ; and led the jury to believe that all these plaintiffs claim as heirs of Willis Stanly, deceased ; the fact is, Elizabeth Mills claims in her own right and as the surviving widow of the deceased ; and further, because it is believed not to embrace a correct principle of law. The fact of leaving the country with his family with the intent to abandon it, could not effect a change of domicil, until he had acquired another domicil or home in a foreign country. The proof was that he died in *itinere* or in Louisiana, on his way to the home of his father-in-law, who resided in Arkansas. *Animo* and *facto*, that is, the intention and fact of removal effect the change of domicil, and if either be incomplete then the domicil is not changed.

The other instruction is believed also to be erroneous. This dispenses with the proof of both the intention and fact of removal in a great measure. The rights of the citizen are not to be defeated and forfeited by vague and doubtful presumptions of law. The facts that work a forfeiture of rights should all be clearly and conclusively proven. (Hardy *et al.* v. De Leon, 5 Tex. R. 245.)

It is believed that these instructions had a material control of the jury, and caused them to find an improper verdict, at least as to the twelve hundred acres that defendants could show no claim to.

The defendants set out their defence, as before stated, specially and under the rule settled in the case of Rivers v. Foot, (11 Tex. R. 662,) they could not have been heard to make any other in proof.

But if the defendants can ask that the purchase money be refunded, they should have shown in their pleadings what was paid, and then proved it, neither of which is done properly. There is no averment of the amount paid. The evidence is that of Lewis to the declarations made by Stanly; that one-half the league was given to clear out the league and paying expenses; that a valuable consideration was paid for the other tract, which may have been from one cent to an indefinite amount. Such testimony, I presume, will not be regarded as sufficient.

The plaintiffs, like administrators, are not presumed to know the terms and nature of the transactions of the deceased; but that the defendants who pretend to claim under these sales, are presumed to be informed of their nature and terms, and should have set them out in their answer, so that plaintiffs could have offered and refunded the purchase money, if equitable so to do, and to have had an adjustment of rents, &c.

*Frank Lipscomb*, for defendants. I. If plaintiffs in errors ancestor abandoned the country with his family, they are thereby precluded. As to abandonment of the country see Holliman v. Peebles, 1 Tex. R.; Horton v. Brown, 2 Tex. R.; Ximines v. State, 1 Tex. R.; Yates v. Iams, 10 Tex. R. The moment a foreign domicil is abandoned the native domicil is re-acquired. The native domicil easily reverts. (Story Conf. of Laws, Art. 46.) The domicil of a married woman is the domicil of the husband, and the domicil of minor children is

the domicil of the father.  (11 Pick, p. 410 ; Story Conf. Laws, p. 53 *et seq.*)  If the plaintiffs were aliens at the death of their ancestor they cannot recover.  (Yates v. Iams, 10 Tex. R., and other cases.)

II.  If the plaintiffs in error were aliens at the death of their ancestor, they could inherit nothing by the Spanish law. (Yates v. Iams, 10 Tex. R. 168, and a case lately decided from Bastrop, not reported.)

III.  By lapse of time and other causes plaintiffs have put it out of their power to restore the parties to their original rights, and on this principle they are checked by the law as laid down in Hunt v. Turner, (9 Tex. R. 386,) " that a party to an illegal contract will not be permitted to avail himself of its illegality, until he restores to the other party all that has been received from him on such illegal contract ; he cannot hold on to the advantages of such a contract, and at the same time be heard with favor in setting up its nullity."  From the lapse of time before the institution of this suit—nearly or quite twenty years—are not the heirs presumed to have ratified the sale, though it may be illegal ?  It is not insisted that the contract to sell, prior to the 26th March, 1834, was legal, though a colonist might, by the colonization laws, sell his lands if the purchaser fulfilled all the requirements of the law.

In regard to the proceedings against the curator Watrous, the same are regular and in accordance with the law and established practice at that time ; and, as said by Judge Hemphill, in Kegans v. Allcorn, (9 Tex. R. p. 25,) we think the same might be said in this case : " The security of property, the repose of society, public policy require that the proceedings of the Courts in former times, under which rights were supposed to have vested and on the faith of which property has been transmitted, should be upheld whenever this may be done without doing violence to the established principles and usages of law."

And it would devolve upon the plaintiffs in error to show

the invalidity of those proceedings ; not only to show that they were wrong, but actually null—the same having been before a Court, the competency of whose jurisdiction is presumed.

The judgment of the Court against said curator was authorised, and is *res adjudicata.* (Pothier on Obligations, Vol. 1, p. 434, Sec. 52 ; Brown's Syndics v. Ferguson, 4 L. R. 259.) And by that judgment plaintiffs in error are bound, (Civ. Code La., Art. 9 ; Do. Art. 57 ;) and to this latter article we call especial attention, as it shows that by the Louisiana practice, the Court clearly had the power to appoint a curator *ad hoc,* when suit was instituted against an absentee. In the case at bar the appointment was regularly made, notice given, appointment accepted, defense made, &c., as the record will show. And it is insisted that the appointment of a curator would make the judgment valid and effectual in such a case, even though the absentee was dead at the time of the rendition of the judgment ; besides, the judgment could not be attacked collaterally.

*J. H. Robson,* also, for appellee. As to the validity and conclusiveness of the decree against the curator of Willis Stanly, the defendants in error refer the Court to the following authorities :

In the case of " Allen v. McClellan," (12 Pen. State Rep.,) it is said : " A decree reciting that the former decree was vacated for such causes as fraud is conclusive, after the time for an appeal has elapsed, though there is nothing on the record to show that proof of the fraud was made, and although it was admitted, that when service of notice of the intended application to vacate was made at the reputed residence of libellant, she was out of the State."

Every presumption in favor of a judgment is strengthened by lapse of time. (4 Dana, 431 ; 4 Id. 441.)

If a judgment is not void on its face its regularity cannot

be questioned collaterally. (4 Bibb, 336 ; 1 J. J. Marshall, p. 195.)

In the case of "Kemp's Lessee v. Kennedy," &c., (5 Cranch. 173,) Mr. Chief Justice Marshall says : "The Courts of the United States are all of limited jurisdiction, and their proceedings are erroneous if the jurisdiction be not shown in them. Judgments rendered in any case may be reversed, but the Supreme Court is not prepared to say they are absolute nullities which may be disregarded."

Again : "If a judgment be rendered in favor of or against a dead man, which would be manifestly erroneous, as soon as the fact shall appear the error could be corrected only by the Court which rendered the judgment. This Court could not notice it, because it does not appear on the record. There must be some remedy for such a case, and there are numerous authorities showing that a writ of error *coram vobis* is the usual and perhaps the only one." (1 J. J. Marshall, p. 30, 31 ; 1 Rol. Abr. 747 ; 3 Salk. 145 ; 2 Tidd's Prac. 1007.)

WHEELER, J. A material question to be determined arises upon the charge of the Court as respects the abandonment of the country by Stanly, the grantee of the land in controversy. To constitute an abandonment of the country under the laws of colonization applicable to this case, a change of the national domicil of the party was essential. And to effect such change there must have been the concurrence of the act and the will. Judge Story in his Conflict of Laws, (Sec. 48,) says : "A national character acquired in a foreign country by residence changes when the party has left the country *animo non revertendi*, and is on his return to the country where he had his antecedent domicil. And especially if he be in *itinere* to his native country with that intent, his native domicil revives while he is yet *in transitu ;* for the native domicil easily reverts. But a mere return to his native country, without an intent to abandon his foreign domicil, does not work any

Mills v. Alexander.

change of his domicil." The mere return of Stanley to his native country did not operate abandonment of the domicil he had acquired in this country. The intention to change his domicil was a necessary constituent of such abandonment, and that it devolved on the defendants to prove. (Ennis v. Smith, 14 How. 422.) Having acquired a residence in this country, the presumption of law is that it was retained. This *prima facie* presumption may be repelled by proving that he had taken up his residence elsewhere. That rebuts the presumption of its continuance. But the mere fact that he was on his return, with his family, to his native country and died in *itinere*, is not sufficient to create the presumption of an abandonment of the domicil he had acquired in this country ; unless it were proven that he left with the intention of such abandonment.

Where a person lives, is taken *prima facie* to be his domicil, until other facts establish the contrary. (Id.) If Stanley had taken up his residence out of the country, that would have afforded *prima facie* proof of a change of domicil. But his last residence was in this country, and his domicil must be taken to have continued here until there was proof of an intention to change it ; and the burden of proof was on the defendants.

We therefore think the charge of the Court upon this point was erroneous. It relieved the party asserting the forfeiture from the necessity of proving an essential element in the fact of abandonment, that of the intention necessary to constitute a change of domicil. We think, as we have heretofore held, that the ground on which it is proposed to effect a disfranchisement and divestiture of property and civil rights ought to be very clearly and satisfactorily established by the party asserting the forfeiture. (5 Tex. R. 245.) And we are of opinion that the burden of proof was on the defendants to establish, not only that the ancestor of the plaintiff had left the country, but that he had done so with the intention of a

permanent change of residence, and that his having gone abroad with his family and there died without other proof of such intention, was not sufficient. As this opinion will require a reversal of the judgment, it becomes material to notice the other defences upon which the decision of the case may depend upon another trial.

It is objected by the appellant that the defendants did not plead the decree of 1839, which was given in evidence, nor the equities on which they relied to defeat the plaintiff's action. The evidence, however, was admitted without objection, and the defendants may plead these defences before another trial. If they had not pleaded specially, their evidence would have been admissible under the plea of "not guilty." (Hunt v. Turner, 9 Tex. R. 385.) But having pleaded certain special matter of defence, the Court might have excluded evidence of other special defences. (Rivers v. Foote, 11 Tex. R. 662.)

We think it must be held that the decree of the District Court of Austin county, of 1839, was a valid and binding judgment, and concluded all inquiry into the legality of the original contract upon which it was rendered. (Grassmeyer v. Beeson, 18 Tex. R. 753.) The office of a curator *ad hoc* appears to have been essentially the same as that of a guardian *ad litem*, representing an absentee. (Partidas 3, 2; 12 ; Laws of Coahuila and Texas, Decree 277, Art. 98 ; Grassmeyer v. Beeson, 528, 529, and authorities cited.) The appointment of the curator and the rendition of judgment were before the repeal of the laws which authorized the appointment. (Dig. Art. 127, Sec. 1, 2.) The absent defendant having been represented by the curator, the judgment, until reversed or annulled by competent authority, would be held binding upon him and his heirs. It cannot, it would seem, be impeached in a collateral action by proof that he had died before its rendition. In Case v. Ribalin, (1 J. J. Marsh, 29,) the Court of Appeals of Kentucky held that the rendition of judgment for or against a dead person is error in fact, only to

be corrected by writ of error *coram vobis*. The Court observed that "if a judgment be rendered in favor of or against a *feme covert*, suing or defending as a *feme sole*, or in favor of, or against a dead man, which would be manifestly erroneous as soon as the fact should appear, the error could be corrected only by the Court which rendered the judgment." There must be some remedy for such a case; and there are numerous authorities showing that a writ of error *coram vobis* is the usual and, perhaps, the only one. (See 1 Rol. Abr. 747; Cro. Eliz. 105; 3 Salk. 145; 2 Tidd's Pr. 1107; Ib. 30.) It would seem therefore that a judgment is not void by reason of the death of a party to it before its rendition, where the fact does not appear by the record; but that it will be held valid, until avoided by a direct proceeding for that purpose. There was therefore no error in the ruling of the Court upon the effect of the judgment in question. But that did not dispose of the entire subject matter in controversy. If it had embraced the entire league, as its effect was a question of law for the Court, and not of fact for the jury, the other rulings in the case might have been held immaterial, and no ground for reversing the judgment.

But it is material to observe, as to the remainder of the land not disposed of by the decree of 1839, that the Court held, and rightly, that it was obligatory on the plaintiffs to restore the price and place the defendants in *statu quo*, before they could avail themselves of the illegality of the contract of their ancestor, to recover back the land he in his lifetime had sold. (Hunt v. Turner, 9 Tex. R. 385.)

It appears by the evidence that the ancestor of the plaintiffs had sold the entire league before leaving the country. That sold to Hommedieu was what remained after the sale of smaller tracts to others. The inability of the defendants to produce the deeds or written evidence of the sales was doubtless owing to the fact mentioned by the witness, that the records were kept at San Filepe and were lost or destroyed

when the town was burned in 1836. Although the evidence did not ascertain the amount of the price paid, yet it would not be unreasonable, after so great a lapse of time, to conclude that it was an adequate price for the land at the time. After the lapse of more than twenty years less strictness of proof will be required than in reference to more recent transactions, and presumptions will be indulged in favor of parties who have been permitted to repose in supposed security upon titles fairly acquired.

After such a lapse of time, it is scarcely possible for parties to be reinstated in the rights they will have lost, or compensated for the injury they will sustain by a recovery against them by the original grantee or his heirs ; to say nothing of the shocking injustice of permitting the latter to take the benefit of the performance of the conditions of the grant by the purchaser, and at the same time take advantage of their own failure to observe and perform the provisions and requirements of the law which were the inducements to the making of the grant, to dispossess and ruin those by whose acts they are enabled to assert the title. It is true that time cannot bar the rights of infants and *femes covert*. But time may obscure and finally annihilate the evidence by which the honest purchaser, who paid a fair, it may be a generous price for the property when it was but little esteemed by the first proprietor who received it from the bounty of the Government, might establish the payment of the price, the confirmation or renewal of the contract of sale when the legal inhibition was removed, or other supervening equities, which would be deemed an insuperable barrier to an action by the grantee or his heirs to dispossess him. Upon a kindred subject, where it was proposed to annul a judgment of long standing, by evidence that minors who were affected by it were not served with process, the Court of Appeals of Kentucky observed : " It does not appear how long the heirs labored under disabilities. But no disabilities, which can be presumed to have existed, could

materially affect the point we are now considering ; for the chief efficacy of the long lapse of time does not arise from actual or presumed acquiescence merely, but results principally from an inflexible rule of law, established for securing the repose of society, and founded on the presumption, sustained by the experience of mankind, that considering the nature of the fact attempted to be proved, the kind of evidence offered to prove it, and the obliterating influence of a lapse of more than twenty years, it is safer, and more reasonable, that the judgment should stand, and the long possession under it remain undisturbed, than that both should now be assailed by testimony which, however false, the adverse party could not be expected to repel.  Infancy is saved from the limitation prescribed for bringing suits, because, in such a case, forbearance operates as evidence of abandonment, or want of right ; and that reason does not apply with full force to infants, who should not be presumed to have been perfectly acquainted with their rights.  But the rule of evidence, which we have been considering, is, as already suggested, founded on reasons of policy, from which infancy is not a fit or admitted exception.   (Per Robertson, Ch. J. 4 Dana R. 442.)

If the lapse of more than twenty years from the date of the contract of sale can have no other effect, it should have that of relieving the purchaser, and those claiming under him, of the necessity of proving the payment of the purchase money, and should authorize the presumption that a fair and adequate price was paid, which, with the use of it, may be equal to the appreciated value of the land.   And thus, without any departure from the principles and usages of the law, if the original grantee or his heirs will have the land they have once fairly sold for a just price returned to them, they may be required to restore the price ; and the great hardship and wrong done the purchaser may be in some degree alleviated.   It is unnecessary to examine particularly the evidence in reference to the defence of the Statute of Limitations.   Considering the

disabilities of coverture and infancy under which the plaintiffs are or have been protected, it does not appear probable that that defence can avail the defendants, if at all, but for a small part of their possessions. But upon the other defences, if properly presented by the pleadings and proof, it may be different.

The judgment is reversed and the cause remanded.

Reversed and remanded.