JOHN H. BROOCKS ET AL. v. B. R. PAYNE ET AL.

Decided January 15, 1910.

**1.—Colonist—Alienation of Land—Void Contract.**

By express statute in force in ·1835 a colonist was forbidden to alienate his land before the final title was extended; such contract was therefore void, and an order made by the probate court in administration upon the estate of the colonist directing the surviving wife as the administrator to execute a deed in consummation of such a contract, and the deed executed in pursuance thereof, conferred no ·right or title to the land as against the heirs of the colonist.

**2.—Specific Performance—County Court—Jurisdiction.**

In 1837 the County Courts sitting in matters of probate had no authority to decree specific performance of a contract for the conveyance of land made by the intestate.

**3.—Trial without Jury—Finding of Fact.**

In the trial of a case before the court without a jury, the issue being whether or not a grantor had ratified and confirmed an invalid contract for the conveyance of land previously made by him, evidence considered and held insufficient to reverse a finding of the trial court in the negative, although it might have been sufficient to support a contrary finding.

**4.—Invalid Probate Sale—Acquiescence—No Estoppel.**

The erroneous belief by heirs in the validity of an order by the probate court decreeing the specific performance of a void contract by their ancestor for the conveyance of land, and their subsequent acquiescence in the claim of the vendee and those holding under him, would not in and of itself estop them from afterward asserting their legal title to said property. There must be some affirmative act causing the other party to change his position to his injury to constitute estoppel.

**5.—Survivor of Community—Power—Community Obligation.**

A survivor of the community has no authority to carry out a void contract made by the deceased spouse. The power of a survivor of the community to act as such ceases when he or she qualifies as administrator or administratrix of the estate.

**6.—Deed of Ancestor—Estoppel.**

Although a survivor of the community may be without authority under certain circumstances to convey the property of the community, her deed thereto may estop her and her heirs from claiming her interest in the same.

**7.—Specific Performance—Void Contract—Return of Consideration.**

Where a surviving wife as administratrix of the husband's estate, under a void order of the probate court executed a deed in specific performance of a void contract by the deceased husband for conveyance of community land, the heirs of the husband in a suit for the land, would not be required to tender the consideration received by their ancestor; but if they were, it would devolve on the purchaser or those claiming under him to prove definitely the amount or value of the consideration paid before they would be entitled to recover the same. Nor could such purchaser or his vendee recover any of the consideration when the value of the portion of the land retained by him or them under the judgment of the court exceeded in value the consideration paid.

Appeal from the District Court of Jefferson County, Texas. Tried below before Hon. W. B. Powell.

*Greer & Minor* and *John H. Brooks,* for appellants.—After the passage of the Act of March 26, 1834 (sec. 36, 1 Sayles' Early Laws, p. 102), a colonist could, at any time after his title issued, alienate by written conveyance, or by parol up to 1840, his land previously granted to him, and therefore could by either of such means ratify a contract to sell made prior to receiving his title, although such contract when made was forbidden by the law as it then existed; for such ratification, occurring after the issuance of title when the inhibition of the law no longer applied, was regarded as a new contract or a new sale and could be effected by the same means (parol or writing) necessary to make an original valid sale or contract. Sec. 36, Act March 26, 1834, 1 Sayles' Early Laws, 102; Atkinson v. Bell, 18 Texas, 479; Texas Tram & Lumber Co. v. Gwin, 52 S. W., 111; Monroe v. Searcy, 20 Texas, 353; Downs v. Porter, 54 Texas, 61; Scott v. Maynard, Dallam, 551.

The facts from which the inference is to be drawn that William Roberts, after title issued to him, ratified by parol or otherwise his contract with David Brown, made prior to receiving his title, are all either admitted or are undisputed, and since they by their overwhelming preponderating weight lead to the one and only natural conclusion, being conclusive to the point, that Wm. Roberts, after title issued to him and prior to his death, accepted with full knowledge of all the facts the benefits of his former contract with David Brown and ratified the same by parol or otherwise, said contract being to the effect that he would give Brown one-half of his (Roberts') headright in consideration of Brown's services and expenses to be performed and borne in locating and surveying the league and paying all government and Land Office expenses and dues for obtaining the title, it follows as a matter of law after this long lapse of time (over seventy years) when all direct sources of proof are obliterated, that there being no dispute as to the facts and they pointing conclusively by an overwhelming weight all to one inevitable conclusion, the court should have reached that one natural conclusion; and therefore this court should find, as a matter of law, or, at any rate, as a fact conclusively

established by the admitted and undisputed testimony, that Wm. Roberts did ratify the contract, just as the lower court should have found. Art. 1027, Rev. Stats.; Henne & Meyer v. Moultrie, 97 Texas, 216; Nowlin v. Hall, 97 Texas, 443; Patrick v. Smith, 90 Texas, 267; Lee v. International & G. N. R. Co., 89 Texas, 683; Houston & T. C. Ry. Co. v. Strycharski, 92 Texas, 1; Grant v. Searcy, 35 S. W., 862; Cope v. Blount, 38 Texas Civ. App., 516; Searcy v. Grant, 90 Texas, 97; Underwood v. Jones, 95 Texas, 124; Eastham v. Hunter, 98 Texas, 560; Kramer v. Wolf Cigar Stores Co., 99 Texas, 601.

Although a sale or a contract to sell by a colonist of his headright prior to the issuance of the title, if made prior to the adoption of the Constitution of March 17, 1836, was invalid under the Act of March 26, 1834, yet such contract was subject to ratification, first, after title issued, and second, after the adoption of said Constitution; and certain equities might intervene preventing recovery by the original grantee or his heirs. Houston v. Killough, 80 Texas, 308; Clay v. Clay's Heirs, 35 Texas, 528; Means v. Robinson, 7 Texas, 516; Hunt v. Turner, 9 Texas, 390; Mills v. Alexander, 21 Texas, 164; Ledyard v. Brown, 27 Texas, 404; Grant v. Heirs of Wallis, 60 Texas, 351; Holmes v. Johns, 56 Texas, 50; Rodriguez v. Haynes, 76 Texas, 232; Buchanan v. Park, 36 S. W., 807; Norton v. Conner, 14 S. W., 194.

In this country, where heretofore lands have been, as a rule, wild and unsettled, and where actual possession rarely accompanied a sale, at least in early days, a sale or a ratification of a sale, whether made by parol or writing may be proven by circumstances; and the inference of a sale or ratification will arise without proof of actual possession by the vendee. Arthur v. Ridge, 40 Texas Civ. App., 137; Texas Tram & Lumber Co. v. Gwin, 52 S. W., 113; Bringhurst v. Texas Company, 39 Texas Civ. App., 500; Garner v. Lasker, 71 Texas, 435.

Inasmuch as the undisputed evidence shows that David Brown located and surveyed William Roberts' headright, bearing all expenses therefor and further paid the government dues, plaintiffs and interveners were, in any event, required, as a condition necessary to recovery, to offer to restore and to restore the value of Brown's services and the amount of his expenses and advances with interest, and not having done so they could not recover, and since the judgment did not award to the defendant, Broocks (standing in Brown's shoes), or to any of the defendants, these sums it is necessarily erroneous. Houston v. Killough, 80 Texas, 307; Hunt v. Turner, 9 Texas, 385; Mills v. Alexander, 21 Texas, 154; Ledyard v. Brown, 27 Texas, 405; Rodriguez v. Haynes, 76 Texas, 232; Buchanan v. Park, 36 S. W., 807; Rivers v. Foote, 11 Texas, 670; Lapowski v. Smith, 1 Texas Civ. App., 395; sec. 29 of decree 272, article 66, p. 101, 1 Sayles' Early Laws; secs. 2 and 5, decree 128, article 53, pp. 78 and 79, 1 Sayles' Early Laws; sec. 2 of decree 309, article 82, p. 126, 1 Sayles' Early Laws.

Since the probate records of San Augustine County are incomplete, and especially since it was shown that some papers in William Roberts' estate were missing; and since it appears that the deed made by Sarah Roberts, administratrix, to David Brown on August 8,

1837, recites a cash consideration of two thousand dollars paid upon delivery, showing it was made upon "an order" of the Probate Court, without specifically referring as the basis of the deed to the order of March 29, 1837, on the petition of March 27, 1837, directing the making of a deed in pursuance of a prior contract between Brown and Roberts, which order was made on the day Sarah Roberts was appointed administratrix, and thirty-five days before she qualified, and over four months before the deed; and since Sarah Roberts and the heirs recognized and acquiesced in this deed showing a present sale and the assertion of title under it by Brown and his vendees for over sixty years, it will now be presumed in support of the deed and the regularity of the proceedings that another lawful and regular order authorizing a sale for a present consideration, as evidenced by the deed, was made in harmony with the recitals of the deed, because, first, it will be presumed that the proceedings were regular and the court exercised its authority lawfully and in an orderly manner, unless the contrary conclusion appears necessary from what the record affirmatively shows; and second, such other order is not inconsistent with the deed and other facts, but is alone in harmony with the recitals in the deed. On presumption of an order: Greenleaf on Evidence, secs. 46, 48, 509; Miles v. Dana, 13 Texas Civ. App., 241; Weems v. Masterson, 80 Texas, 45; Taffinder v. Lea, 19 S. W., 682; Giddings v. Day, 84 Texas, 606; Ruby v. Volkenberg, 72 Texas, 461; Corley v. Anderson, 5 Texas Civ. App., 213; Martin v. Robinson, 67 Texas, 368; Murchison v. White, 54 Texas, 83.

The evidence conclusively showed (1) that William Roberts before his death ratified the former contract; and (2) that either the deed of August 8, 1837, by Sarah Roberts, administratrix, was a sale and made upon a present consideration moving, or, if not, that Sarah Roberts as survivor in community also ratified the former contract and agreed to carry out and thus discharge the community obligation before and independently of the administrator's deed; therefore the court should have denied plaintiffs and interveners any recovery whatsoever, and the judgment was erroneous upon said grounds. On authority of survivor in community and presumptions arising: Veramendi v. Hutchins, 48 Texas, 552; Sanger v. Moody, 60 Texas, 99; Box v. Word, 65 Texas, 166; Baldwin v. Roberts, 13 Texas Civ. App., 572; Maxson v. Jennings, 19 Texas Civ. App., 707; Stipe v. Shirley, 33 Texas Civ. App., 226.

On estoppel by the recitals: Corzine v. Williams, 85 Texas, 506; Henderson v. Lindley, 75 Texas, 189; Cope v. Blount, 38 Texas Civ. App., 516.

On estoppel from the conveyance of the land itself and not the mere right of the estate: Carothers v. Alexander, 74 Texas, 328; Cope v. Blount, 38 Texas Civ. App., 516; Wells v. Steckelberg, 52 Neb., 597.

On the estoppel from the covenant of warranty: 11 Am. & Eng. Enc. Law, 397-398; id., vol. 8, p. 160; Cope v. Blount, 38 Texas Civ. App., 516; Heard v. Hall, 16 Pick. (Mass.), 460; Morris v. Wheat, 8 App. Cas. (D. C.), 379; Sumner v. Williams, 8 Mass., 207, 5 Am. Dec., 83.

Even if David Brown were an official surveyor, a contract between Roberts and him by which the former was to pay one-half his head-right in consideration of certain services and expenses, including the service of surveying, would not be void, but at most would only be irregular and subject only to a direct attack seasonably made, and the contract could not on any such grounds be attacked in this suit by the heirs of William Roberts after the lapse of seventy years of acquiescence and recognition. And the title and rights of defendants under said contract are now concluded and complete, either by deed, ratification or estoppel and can not be assailed in any such manner. Section 29 of decree 272, article 66, p. 101, 1 Sayles' Early Laws; sections 2, 5, and 6, decree 128, article 53, p. 79, 1 Sayles' Early Laws; Rutherford v. Stamper, 60 Texas, 447; Fisher v. Wood, 65 Texas, 199; Byars v. Thompson, 80 Texas, 468; McCampbell v. Durst, 15 Texas Civ. App., 534.

*Lewis & Phillips* and *Oliver J. Todd,* for appellees.—The contract between Brown and Roberts being void, created no right whatsoever; and if any obligation existed between the parties it was independent of the illegal contract. DeLeon v. White, 9 Texas, 598; Flanikin v. Fokes, 15 Texas, 180; Wills v. Abbey, 27 Texas, 203; Cotulla v. Laxson, 60 Texas, 443; Keith v. Fountain, 3 Texas Civ. App., 391; Wiggins v. Bisso, 92 Texas, 219.

The contract between Roberts and Brown being illegal and in violation of the law can not be ratified as contended for by appellants. Rue v. Missouri Pac. Ry. Co., 74 Texas, 479.

The action of the court in not entering judgment for appellants for the services rendered by Brown was proper because they did not plead or prove any right to any such sum. Wilkins v. Owens, 102 Texas, 197.

Appellants being holders of the record title and suing to ascertain their legal ownership, can not be estopped from asserting such legal title by any negligence or delay on their part in asserting their rights. Wilkins v. Owens, 102 Texas, 197; Hilburn v. Harris, 29 S. W., 923; Mast v. Tibbles, 60 Texas, 304; Moss v. Berry, 53 Texas, 632; Davidson v. Wallingford, 30 S. W., 290.

The only rights which appellants assert are such rights as Brown took under the administrator's sale, and said appellants do not claim or assert any purchase of or assignment by Brown or his heirs of the sum of money (which they allege in their brief to be $73) to which they claim Brown was legally entitled, and said claim of $73 is now, so far as this record shows, vested in Brown and his estate rather than the appellants, and if it were true that the Roberts heirs were indebted to the Brown heirs in the sum of $73, this would not be any reason why these appellees should not recover the land in controversy. Wilkins v. Owens, 102 Texas, 197.

There is no situation presented here upon which a presumption of any additional order of the Probate Court of San Augustine County can be indulged. Tucker v. Murphy, 1 S. W., 76; House v. Brent, 69 Texas, 27; Hill v. Templeton, 29 S. W., 537; Perry v. Blakey, 47 S. W., 845.

It was unnecessary for appellees to make any additional offer to do equity because if an offer had been necessary, it was complied with; and furthermore, appellants have not plead or proven any subrogation to the rights of Brown for the collection of his legal surveyor's fees; and because the appellees were not suing to enforce any equitable claim, but upon their legal rights; and because appellants in affirmatively seeking equity did not themselves offer to do equity, but on the contrary insisted upon legal rights based on a legal estoppel (which is unfounded in equity), and asked for, and recovered one-half of the lands on a legal estoppel based upon Mrs. Roberts' warranty, which one-half of the property recovered exceeds many times the amount that Brown was entitled to; and having so recovered, and being now endeavoring to hold such property, they could not assert further rights in equity without offering to surrender the one-half the property recovered or to credit it against their claim.

The contract sought to be enforced being illegal and prohibited by law, and the attempted specific performance thereof being without jurisdiction and void, and the deed having been made in pursuance of the void decree, and being an attempted consummation of the prior illegal agreement, the law will not give effect to the deed thus executed by Sarah Roberts in pursuance of a void judicial order, either directly or by the indirect method of estoppel.   16 Cyc., 706, and cases cited; 1 Greenleaf, Ev., 324; Stevens v. Hayes, 48 Am. Dec., 359; Dougal v. Fryer, 22 Am. Dec., 458; Caffrey v. Dudgeon, 10 Am. Rep., 133; Atkinson v. Bell, 18 Texas, 479; Holmes v. Johns, 56 Texas, 51; Hickman v. Stone, 5 S. W., 835.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title to a tract of 1578 acres of land, a part of the William Roberts headright league in Sabine County.   The appellees, who recovered in the court below, are descendants of William Roberts, the original grantee, and claim by inheritance.   The appellants claim under David Brown, and the only fact issue in the case is whether said Brown acquired the title of William Roberts and his wife, Sarah Roberts.

The trial in the court below without a jury resulted in a judgment in favor of appellees for a portion of the land claimed by them, such portion being a part of the undivided one-half of the land owned by William Roberts, the community interest of the wife of said Roberts in the land being adjudged to appellants.

As before stated, the land in controversy is a part of a league granted by the Government of Mexico to William Roberts.   The title was extended on November 12, 1835.   William Roberts died in the latter part of the year 1836 or early in 1837.   His widow, Sarah Roberts, procured letters of administration upon his estate from the Probate Court of San Augustine County in the spring of 1837, and acting under an order of said court, which will be hereinafter set out, she conveyed the south half of the league, including the land in controversy, to David Brown on August 8, 1837.   The application of Sarah Roberts, upon which the order above mentioned was granted, is as follows:

"The Republic of Texas,
 San Augustine County.
"To the Honorable Wm. McFarland, Chief Justice and Judge of the
   Probate Court, holding session in and for the County and Republic
   aforesaid:
"The petition of Sarah Roberts, administrator upon the estate of
William Roberts, deceased, represents unto your Honor that the said
William Roberts in his lifetime agreed and contracted to and with one
David Brown for him, the said David Brown, to clear out of the
Land Office the land to which he, the said William Roberts, was
entitled as a settler and citizen, and he, the said David Brown, hav-
ing located, surveyed and paid the office fees in obtaining a title from
Government for his, the said William Roberts land, and he, the said
William Roberts, having died before making a title to the said David
Brown, your petitioner, administrator as aforesaid, therefore petitions
your Honor for leave to make and execute a title to the land to
which the said David Brown is entitled to, to him, the said David
Brown.
"Your petition prays for such other and further relief as in duty
bound will ever pray, etc. 27th March, A. D., 1837.

E. W. Cullen,
Atty. pro. pettr."

Upon this petition were file marks, endorsements and orders as
follows:
   (Back of petition.)—"Let the order of sale be granted as prayed
for in petition. 27th March, 1837. Wm. McFarland, C. J. C. C."
   "Filed March 27, 1837. S. W. Blount, Clk."
   (File marks in two places.)
   (Probate Papers, San Augustine County, Texas.)
"It is ordered by the court that an order be granted to Sarah
Roberts, admr. on the estate of William Roberts, deceased, to make
a title to one-half league of land to David Brown as prayed for in
the petition." (Not dated.)
   Following this petition and order there is found upon the probate
minutes of said County Court the following:
   "Probate Court, March term, 1837. March 29, 1837.
   "It is ordered by the court that an order be granted to Sarah
Roberts, admr. on the estate of William Roberts, deceased, to make a
title to one-half league of land to David Brown, as prayed for in
the petition."
   On August 8, 1837, Sarah Roberts, as administratrix of the estate
of William Roberts, conveyed the south half of the league to David
Brown, describing the land conveyed by metes and bounds. This
deed, which was duly recorded on the 18th day of August, 1837,
omitting the description of the land, is as follows:

"Republic of Texas,
 San Augustine County.
"This indenture made and entered into in this eighth day of
August, in the year of our Lord One Thousand Eight Hundred and

thirty-seven, 1837, Sarah Roberts, administratrix of William Roberts, deceased, of the County and Republic aforesaid, by virtue of an order of the Honorable Probate Court of said county, and David Brown, of the other part, also of the County and Republic aforesaid, witnesseth: That for and in consideration of the sum of Two Thousand Dollars of good and lawful money in hand paid by the said David Brown to the said Sarah Roberts, administratrix as aforesaid, at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, the said Sarah Roberts doth bargain, sell, alien and convey and by these hath bargained, sold, aliened and conveyed unto the said David Brown, his heirs and assigns (here follows description of the land), and for the said David Brown to have and to hold said half league of land together with all and singular the rights, members and appurtenances thereunto belonging or in anywise appertaining unto the said Brown, his heirs and assigns forever in fee simple; and I, the said Sarah Roberts, administratrix of the said William Roberts, dec'd, do forever warrant and defend the right, title, interest and claim of the said David Brown, his heirs, executors, administrators and assigns to the aforesaid half league of land or bargained premises, not only against myself, the said Sarah Roberts, administratrix, my heirs, executors, administrators and assigns, but against the claim or claims of all persons whatsoever.

"In testimony whereof, I, the said Sarah Roberts, administratrix as aforesaid, hath hereunto set my seal and hand on the day and year above written, delivered in the presence of (interlined in the fifth, seventeenth, twentieth, twenty-first, seventy-ninth lines all with Sarah instead of Mary Roberts).

(Signed) "Sarah X Roberts, administratrix of Wm. Roberts, dec'd, her mark."

The appellants by mesne conveyances hold whatever title was acquired by David Brown to the south half of said league.

In addition to the foregoing statement we adopt the following findings of fact filed by the trial judge:

"The court finds from all of the facts and circumstances of the case that David Brown was an English deputy surveyor under the Mexican Government, and in said capacity made and returned the original English field notes upon which the title to the William Roberts headright survey, the land in controversy, issued.

"That David Brown and William Roberts, prior to the issuance of the title to said Roberts' headright, entered into some sort of agreement, either oral or written, by which David Brown was to locate and pay the office fees for said Roberts upon his headright survey, and was to receive in return therefor a one-half interest in said league.

"That in pursuance of said contract David Brown, an English or deputy surveyor, located, surveyed and returned the English field notes to said league upon which title was extended by the Mexican Government on November 12, 1835, and that David Brown paid all expenses and official fees in locating and titling said land.

"That said William Roberts established his home on said headright,

and on the north one-half thereof, where he lived until the time of his death, which occurred in the latter part of 1836 or the first of 1837.

"That Sarah Roberts, as administratrix, on the 8th day of August, 1837, executed and delivered, in accordance with the orders of the court hereinbefore referred to, a certain administratrix's deed purporting to convey to said David Brown the south one-half of William Roberts' headright, by metes and bounds, which deed was signed by Sarah Roberts as administratrix by attaching her mark thereto, and the court finds that said deed was executed in accordance with the foregoing orders of the court, and none other, and that no consideration of any kind was paid by the said David Brown to the said estate further than the performance of a contract recited in her petition, which deed is a part of the record herein and· is hereby referred to for a more perfect statement of its contents.

"That said Sarah Roberts, the surviving widow of William Roberts, resided on the north one-half of said league until her death, which occurred some time between 1845 and 1856, and that she, said Sarah Roberts, believed until the time of her death that the Probate Court had authority to order her to make title to David Brown, and that she had conveyed him a good title by her deed as administratrix.

"That the taxes were rendered and paid upon said league as shown by the Comptroller's certificates which are contained in this record, and are hereby referred to for a more perfect statement as to their contents, which in substance shows that the widow of William Roberts and her heirs and vendees have assessed and paid taxes on the north half of the league ever since 1846 up to the present time, and that they have never rendered or paid on the south one-half of the league, and that David Brown and his vendees have practically rendered and paid taxes on the south one-half of said league since 1846 to the present time.

"That the heirs of said William Roberts and Sarah Roberts have taken no action relative to the land in controversy, or any part of the south half, and most of them who have had knowledge of the deed to Brown, at least until the last two or three years, supposed the title to be valid in said David Brown and his assigns, and the said heirs took no action whatsoever with reference to the said land in the way of taking possession of the same, or paying taxes on same, or asserting acts of ownership over the same.

"The court further finds with reference to the land in controversy in this suit that it is open timbered land, and has never been in the possession of anyone, and no open, visible, notorious acts of ownership other than making deeds and rendering same for taxes and payment of taxes, so far as they are shown to have been paid, have been exercised over same by David Brown, or those claiming under him.

"That while Sarah Roberts and her heirs, and the heirs of William Roberts, have since the date of the death of William Roberts down to the time of filing this suit taken no legal proceeding to cancel or avoid said administratrix's deed, they have nevertheless made no assertion to David Brown, or any of those claiming under him, that

they did not claim the land in controversy, nor have they induced any of the purchasers under Brown to make purchase under said Brown title in any way whatsoever, nor are Brown or those claiming under him shown to have relied on any acts or words of plaintiffs or interveners in making purchase.

"That while some of the probate papers of San Augustine County have been lost and others have been carelessly kept, the said petition of said Sarah Roberts to be allowed to transfer one-half of the headright of her deceased husband to David Brown, as above mentioned, and the order endorsed upon said petition and the said order recorded upon the minutes of the court which referred to the petition and the deed to said Brown reciting the said order, have at all times been of record or on file in San Augustine County, Texas, since 1837 until the present time; and the court further finds that none of the probate minutes of San Augustine County have been lost or destroyed, but that same are intact. That the petition to make the deed to one-half of the land was not among the file papers of the estate, and was not found until discovered by the abstractors amongst other papers in the clerk's office, and that the said petition was not of record in the clerk's office when Broocks bought the land in controversy, but the order or judgment of the court and said petition and the deed made by virtue of said petition were of record when Broocks and his vendors bought.

"That said David Brown from the time of the issuance of the title to the time of the death of the said William Roberts, lived at the town of San Augustine, about eight or nine miles from the place of residence of said Roberts, but whether said Brown and said Roberts saw each other during that period of time, or whether said David Brown was at his home or absent during that time, or whether William Roberts was absent or at his home during that time, there is nothing in the record upon which the court can find or conclude.

"That shortly after the deed from Sarah Roberts, administratrix, was executed and delivered to David Brown, that said Brown made deed to said property to William Kerr, and that same was sold through various mesne conveyances, and passed into the defendants here, but there is no proof in the record that the plaintiffs or interveners herein had any actual knowledge of the said conveyances of the south half of said league, except the deed from Sarah Roberts, administratrix, to David Brown, and as to that deed I find that the widow, Sarah Roberts, and all of the adult children knew of the deed, but that they, nor either of them, knew the legal effect of the same, but thought it conveyed title to David Brown to the south half of the league."

The oath and bond of Sarah Roberts as administratrix was filed on May 4, 1837. David Brown was one of the sureties upon this bond. The inventory of the estate was filed December 6, 1837. This inventory only shows $50 cash in hand of the administratrix.

If, as found by the trial court, the deed from Mrs. Roberts to Brown was made under the order of the Probate Court directing her to make such conveyance in fulfillment of the contract between Brown and William Roberts recited in the application of Mrs. Roberts for

said order, such deed conveyed no title. The contract was in contravention of an express statute which forbade a colonist to alienate his land before the final title was extended, and was therefore unenforceable; and in addition to this, the County Court at that time had no authority to decree specific performance of a contract for the conveyance of land, and therefore the order directing a conveyance for the purpose of carrying out said contract, and the deed executed thereunder, were void. Houston v. Killough, 80 Texas, 307; McCartey v. Merry, 59 S. W., 304; Cope v. Blount, 38 Texas Civ. App., 516 (91 S. W., 616). Appellants recognize this as well settled law, but insist that the trial court should have found in their favor upon other grounds hereinafter discussed.

The first, second and third assignments, which are presented together, assail the judgment on the ground that it is unsupported by the evidence. This contention is presented by the following proposition submitted under said assignments:

"The facts from which the inference is to be drawn that William Roberts, after title issued to him, ratified by parol or otherwise his contract with David Brown made prior to receiving his title, are all either admitted or are undisputed, and since they by their overwhelming preponderating weight lead to the one and only natural conclusion, being conclusive to the point that Wm. Roberts, after title issued to him and prior to his death, accepted with full knowledge of all the facts the benefits of his former contract with David Brown, and ratified the same by parol or otherwise, said contract being to the effect that he would give Brown one-half of his (Roberts') headright in consideration of Brown's services and expenses to be performed and borne in locating and surveying the league and paying all Government and Land Office expenses and dues for obtaining the title, it follows as a matter of law, after this long lapse of time (over seventy years) when all direct sources of proof are obliterated, that there being no dispute as to the facts and they pointing conclusively by an overwhelming weight all to one inevitable conclusion, the court should have reached that one natural conclusion; and therefore this court should find, as a matter of law, or, at any rate, as a fact conclusively established by the admitted and undisputed testimony, that Wm. Roberts did ratify the contract, just as the lower court should have found. The evidence being admitted and undisputed and conclusive, the question becomes to all intents and purposes one of law; that is, what conclusion should have flown from the admitted and undisputed facts?"

This proposition is based upon the undisputed evidence which shows that no claim was ever asserted by Mrs. Roberts or Roberts' children, who lived for a number of years after the death of Wm. Roberts on portions of the north half of the league which they divided between themselves, to any portion of the south half of the league, and that in their partition deeds and in subsequent deeds executed by said children they recognized and called for the Brown line as located by the deed from Mrs. Roberts to Brown; and the further fact that David Brown's home was in the town of San Augustine, only nine miles from the home of Wm. Roberts, and that Wm.

Roberts lived for a year or more after he received his title, and during that time probably transacted business in said town.

These facts, it is contended, coupled with other undisputed evidence showing a continuous claim and assertion of ownership of the south half of the league by David Brown and those claiming under him, required the trial court to find as a fact conclusion that William Roberts after he received his title to the league either expressly ratified his original contract with David Brown or in consideration of the services rendered by Brown under said contract, the benefit of which accrued to and was accepted by him, verbally or by deed which has been lost conveyed to Brown the south half of the league.

While the facts stated would have authorized the court to have found in favor of appellants upon this issue, we do not think they compel such finding. The most persuasive of these facts, viz., the continuous claim of Brown and his vendees and the acquiescence of Roberts' children in such claim, is greatly weakened if not destroyed by the conveyance by Mrs. Roberts under a void order of the Probate Court. The claim of Brown and the nonclaim of Roberts' heirs can be reasonably explained by the theory accepted by the trial court, that all of said parties believed that the order of the court and the conveyance made thereunder were valid and passed the title to Brown.

Under the fourth, fifth, sixth, seventh and eighth assignments of error, which is unnecessary to set out or discuss in detail, the appellants insist that the judgment of the court below should be reversed because the facts shown by the undisputed evidence estop the heirs of William and Sarah Roberts and their descendants from asserting title to the land in controversy against those claiming under David Brown, or at least such facts show such equity in Brown and those holding under him as to require plaintiffs, as a condition precedent to their recovery, to do equity by restoring to defendants who hold under said Brown the consideration paid and received by him under his contract with William Roberts.

We agree with the trial judge in his conclusion that the evidence does not raise the issue of estoppel. The erroneous belief of Roberts' heirs in the validity of the order of the Probate Court and the conveyance of Mrs. Roberts thereunder and their subsequent acquiescence in the claim of Brown and those holding under him, would not in itself deprive them of their legal rights, and the evidence shows no affirmative act on their part which should estop them from now asserting their title. Their mere silence and failure to assert their title sooner would not estop them. There has been no possession of the land by appellants or those under whom they claim, and nothing has occurred to require a suit to protect their rights. The deeds made by Roberts' children, in which they recognized the Brown line, are not shown to have been seen by appellants, and there is nothing in the evidence to indicate that appellants or any of those under whom they claim relied upon the recitals in said deeds, or had any knowledge thereof before they purchased the land in controversy.

Appellees are not in the position of one who sues to set aside a voidable contract under which he is shown to have received benefits,

and the rule which requires a plaintiff in such case as a condition precedent to recovery to do equity ·by restoring the benefit received. under the contract, has no application. In· the case of Houston v. Killough, *supra,* which is cited by appellants in support of their contention, the legality of the contract in the performance of which the void deed was executed does not seem to have been questioned. The only infirmity in the title of defendants passed upon in that case was the want of authority·in the Probate Court to decree specific performance of the contract. The right to recover the consideration paid by the defendants' predecessor in title and received by plaintiffs' ancestor under an illegal and unenforceable contract, does not seem to have been in the mind of the judge who wrote the opinion in that case, nor does it appear that the question of burden of pleading and proof on such issue was under consideration. In the cases· of Hunt v. Turner, 9 Texas, 385, and Mills v. Alexander, 21 Texas, 154, the contracts were fully executed and the apparent legal title vested in the grantors, and in order for heirs of the grantors to recover they had first to cancel the deeds of their ancestor, and the court held that before they could have the deeds cancelled and recover the title to the land they would be required to return the consideration received by their ancestors for the land. In the present case the contract was .executory and does not purport to pass the title. Brown could not have enforced specific performance against Roberts or his estate, and it is not necessary for appellees in this case to set aside the contract to entitle them to recover the land. It seems clear to us that if no deed had been executed, the contract between Roberts and Brown would have been no barrier to appellees' right to recover on their legal title, because it did not vest Brown with any title either legal or equitable. He had no rights under the contract and his only right against Roberts or his estate would have been limited to compensation for the services rendered by him in locating and surveying the land and obtaining the issuance of title thereto to Roberts. The deed executed by Mrs. Roberts being void and no consideration having been paid therefor by Brown other than the services performed by him under his unenforceable contract, he acquired no rights under said deed. The evidence fails to show that appellants have any right to recover the amount due Brown as compensation for his services, and fails to show what amount was due Brown as such compensation, and it therefore follows that no judgment should have been rendered in appellants favor on this claim. (McCartey v. Merry, 59 S. W., 304; Fuller v. O'Neil, 69 Texas, 349; Wilkins v. Owens, 102 Texas, 194.)

This conclusion renders it unnecessary for us to pass upon the illegality of .the contract because of the official position held by Brown at the time it was made. The trial court held the contract void on this ground. Appellees contend that this holding is sustained by the case of Wills v. Abbey, 27 Texas, 203. We do not think this case is conclusive of the question because at the time the contract there under consideration was entered into there was a statute prohibiting such contracts.

Appellants' remaining assignments present only two questions which

we deem it necessary to discuss. It is urged that the court should have found from the evidence that the deed executed by Mrs. Roberts was not made under the orders of the court before set out, but under a valid order not shown by the record; and that if no valid order of the court can be presumed from the evidence, since it appears that such sale was made for the purpose of discharging a community obligation, she as survivor of the community had authority to make such conveyance independent of any order of the Probate Court. In answer to the first of these contentions, we are of opinion that while the trial court might have found from the evidence that a valid order of sale was made by the Probate Court and the deed from Mrs. Roberts to Brown was made in accordance with such order, it seems to us that such finding would have been against the preponderance of the evidence. But be this as it may, it is clear that the evidence does not compel such finding. The minutes of the Probate Court are intact, and it appears therefrom that it was the practice in said court, whether it was required by law or not, to enter all orders of this kind in the minutes. The only order appearing in the minutes is the one directing the administratrix to convey the title to Brown in fulfillment of the contract before mentioned. The deed does not refer to any specific order and it is reasonable to infer that the order referred to in general terms is the one appearing upon the minutes of the court. In addition to this, the inventory returned by the administratrix shortly after the deed was executed does not show the cash in hand which she should have had if, as recited in said deed, she had sold the land to Brown for two thousand dollars cash. These facts we think fully justified the trial judge in finding that no consideration was in fact paid by Brown for said conveyance, and that the same was made under the order of the court before set out.

As to the second contention, it is sufficient to say that Mrs. Roberts' power to act as survivor of the community independent of the Probate Court ceased when she qualified as administratrix. (Houston v. Killough, *supra*.) If the deed was made for the purpose of carrying out the unenforceable contract between Brown and Roberts, as found by the trial court, Mrs. Roberts as survivor of the community would have had no authority to make such conveyance. This disposes of all of the material questions raised by appellants, and each of their assignments, all of which have been duly considered by us, is overruled.

Under appropriate cross-assignments appellees complain of the holding of the trial court that they as heirs of Mrs. Roberts are estopped by her deed to Brown from claiming any interest in her half of said land. We do not think the court erred in this holding. The purchasers from Brown had the right to rely upon the recitals and upon the warranty contained in Mrs. Roberts' deed to him, and as against such purchasers neither she nor those claiming under her will be heard to say that her deed did not pass title to the land thereby conveyed. Corzine v. Williams, 85 Texas, 506; Cope v. Blount, 38 Texas Civ. App., 516 (91 S. W., 616).

We are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

### ON MOTION FOR REHEARING.

In our opinion filed herein on December 24, 1909, in discussing the cases of Houston v. Killough, 80 Texas, 307; Hunt v. Turner, 9 Texas, 385, and Mills v. Alexander, 21 Texas, 154, we say:

"In the case of Houston v. Killough, *supra,* which is cited by appellants in support of their contention, the legality of the contract in the performance of which the void deed was executed does not seem to have been questioned. The only infirmity in the title of defendants passed upon in that case was the want of authority in the Probate Court to decree specific performance of the contract. The right to recover the consideration paid by the defendants' predecessor in title and received by plaintiffs' ancestor under an illegal and unenforceable contract does not seem to have been in the mind of the judge who wrote the opinion in that case, nor does it appear that the question of burden of pleading and proof on such issue was under consideration. In the cases of Hunt v. Turner, 9 Texas, 385, and Mills v. Alexander, 21 Texas, 154, the contracts were fully executed and the apparent legal title vested in the grantors, and in order for the heirs of the grantors to recover they had first to cancel the deeds of their ancestors, and the court held that before they could have the deeds cancelled and recover the title to the land they would be required to return the consideration received by their ancestors for the land."

These statements as to the scope of the opinion in the case of Houston v. Killough, and as to the character of the contract under which the defendants claimed in that case, and also as to the contract involved in the case of Hunt v. Turner, are erroneous.

While most of the opinion in the case first mentioned is devoted to a discussion of the question of the validity of the order of the Probate Court under which the deed to defendants' predecessor in title was executed, the validity of the original contract, in performance of which the deed was executed, was expressly passed upon and the contract held to be void upon the ground that it was prohibited by law. In the Hunt case the defendants claimed under a bond for title and not under an executed contract of sale.

It follows that the statement in our former opinion that the defendants in each of the three cases mentioned in said opinion were claiming under contracts which were fully executed and which vested the defendants with the apparent legal title to the land, is inaccurate, and it may be that the distinction we make in said opinion between the equities of those claiming under an executory contract of sale and those claiming under a deed which passes the apparent legal title is not sound.

But be this as it may, we adhere to the conclusion that under the authorities cited the plaintiffs in this case were not required to tender the defendants the consideration received by Roberts under his contract with Brown, and if defendants were entitled to recover

such consideration from plaintiffs the burden was upon them to show the amount of such consideration. This was the holding of this court in the case of McCartey v. Merry, 59 S. W., 104, and a writ of error in said case was refused by the Supreme Court.

If, as contended by the appellants, the evidence in this case is sufficient to authorize the recovery by defendants of the government charges paid by Brown in obtaining the issuance of the title, the one-half of the land awarded defendants in this case is greatly in excess in value of the amount he was so entitled to recover.

At appellants' request we make the following additional findings of fact: While that portion of Brown's half of the league in ·controversy in this suit has never been occupied, other portions of said half of the league have been occupied for a number of years by persons holding under the Brown title, 'and there have been numerous conveyances of portions of said half of the league by deeds which were seasonably placed of record, and the assertion and claim of ownership by Brown and those holding and claiming under him has been notorious ever since the execution of the deed to him by Mrs. Roberts.

After a careful consideration of the able motion for rehearing filed by appellants' counsel, we have concluded to adhere to our former decision of the questions presented, and the motion is overruled.

*Affirmed.*

Writ of error refused.