### M. J. HOUSTON ET AL. V. C. P. KILLOUGH ET AL.

#### No. 2757.

1. **Illegal Sale of Lands.**—Land was granted to a colonist in 1831. In 1833 the grantee in writing conveyed one-fourth of the grant to another and bound himself to make such further assurance of title as might be necessary so soon as the laws would permit him to do so. In 1886 heirs of the grantee brought suit for the land against parties holding under the conveyance of 1833. *Held,* that the conveyance was prohibited by law.

2. **Jurisdiction of Probate Courts.**—The jurisdiction of Probate Courts from 1836 to 1844 reviewed:

1. The Constitution of the Republic simply provided that there should be a County Court in each county, but did not define their jurisdiction.

2. Act of December 20, 1836, conferred on County Courts power to probate wills, grant letters of administration, appoint guardians, and to examine and settle the accounts of executors, administrators, and guardians, and full jurisdiction of all testamentary and other matters appertaining to a Probate Court within their respective counties.

3. Act of February 25, 1840, more fully regulated the Probate Courts and prescribed their mode of procedure than did the former law, but neither of them expressly conferred the power to decree and enforce specific performance of contracts to convey land made by the person whose estate might be in administration.

4.   The Act of February 2, 1844, seems to have been the first act that conferred such power.

5.   Decree No. 81, of January 22, 1836, provided that all proceedings relative to successions and matters of probate should be regulated and governed agreeably to the principles and laws in similar cases in the State of Louisiana.   But the courts of probate of Louisiana did not have power to enforce specific performance of contracts to convey lands made by a deceased person.

3.   Case Overruled—Jurisdiction of Probate Courts.—Jones v. Huff, 36 Texas, 683, discussed and overruled so far as it held that in 1837 Probate Courts in Texas had power to enforce specific performance and sale for land.   The cases there cited are discussed.

4.   Specific Performance—Probate Act of 1848.—Section 53 of Act of March 20, 1848, seems to have been the first law which permitted the holder of a contract to convey land to have specific performance through a decree of a Probate Court.

5.   Specific Performance of Sale of Land—Probate Courts.—Between December 31, 1838, and February 28, 1842, within which period the findings of the trial court show there was a decree in the Probate Court of Washington County and a deed made under the decree enforcing the sale made in 1833 after death of the grantee, the Probate Courts of the Republic of Texas had no jurisdiction to hear and determine such matters.

6.   Jurisdiction of Probate Courts.—If the court had jurisdiction over the question the facts calling for its exercise would be presumed.

7.   Void Judicial Proceedings.—The decree and deed under it being void, but there appearing to have been paid a money consideration for the land by the purchaser under the invalid sale, the heirs of the grantee upon recovering the land should return the purchase money and interest thereon.

APPEAL from Washington.   Tried below before Hon. C. C. Garrett. The opinion contains a statement.

*Leake, Shepard & Miller* and *Bassett & Muse,* for appellants.—The equities in this case are all with the appellants, and the inherent justice of their cause demands that the land in controversy be awarded to them unless refusal be made necessary by some inflexible rule of law.

1.   It is respectfully submitted that the court, instead of reversing and remanding, should have rendered judgment for the appellants. The case was submitted upon the law and facts, the findings by the district judge having been accepted by both parties as a statement of facts.   Granting that appellees may have had the right to recover the land if they had tendered into the court below the principal and interest of the money paid by McDaniel, as recited in the bond, together with the taxes paid by appellants for the past forty years, yet they volunteered to claim all and made no concession whatever.   They stood upon their supposed legal title and did not offer even to do equity. This having been held insufficient, what right have they now to ask that the case, after reversal, should be sent back in order that they may make a new case in the court below?   They have had their day in court, and there is no equity or hardship in the case as it stands that should entitle them to be heard again.

In the case of Kaufman & Runge v. Hudson, 65 Texas, 716, the judgment was reversed and rendered, and urgent appeal was made on the motion for rehearing to have the case remanded in order that appellees might amend their case, which was denied, though the report of the case does not show that a motion was made.

2.   It is now fifty-seven years since the bond for title was made by Clark to McDaniel, and at least fifty years since the decree was made by the Probate Court of Washington County enforcing it.   While it is true there has been no such adverse possession of the land as would start the statutes of limitation, still the general recognition of ownership under appellant's title, the regular payment of taxes, etc., have in other cases been held the equivalent of possession in so far as to make sufficient foundation for the presumption of a grant or the proof of an ancient instrument.   Glasscock v. Hughes, 55 Texas, 476; Gardiner v. Lasker, 71 Texas, 431; Johnson v. Timmons, 50 Texas, 521; Stroud v. Springfield, 28 Texas, 649.

These contracts of sale, though prohibited by the colonization laws and denounced as illegal, have never been treated or regarded as nullities.   Following Ledyard v. Brown, 27 Texas, 404, and many other cases, the opinion heretofore delivered in this case held that the maker of such contracts can not recover the land from his vendee without first returning the consideration with interest from the time of its payment.

In Hunt v. Turner, 9 Texas, 391, the court went so far as to say that specific performance of such a contract might be decreed upon sufficient equity.   Speaking of ratification implied from the conduct of the heirs of Hunt the court said:   "Had all these facts been alleged in the answer in the nature of a cross-bill, and had the defendant prayed that the plaintiff should be decreed to convey the title and those facts found by the jury, we should without any hesitation have held that they were entitled to such decree."

The price paid for the land by McDaniel was $150, its full value at the time.   Clark had the use of this money at a time when he could, and probably did, purchase other land with it—now far more valuable than this controversy.   He made no effort to cancel the bond before his death.   Grant that the widow and heirs of Clark after his death had the right to refund the money to Chriesman (McDaniel's assignee), yet surely they must be required to exercise it in a reasonable time, and their long silence should be held a complete ratification.   While the land was worth less (or no more) than the money, they did not want to rescind; but now, when the land is worth from $8000 to $10,000, and the original $150 with uncompounded interest would amount to about $700, they find it to their interest, after waiting over half a century, to come in and ask the rescission, and even this day they would not do it but for its necessity under the opinion of this court.   If such conduct

after the lapse of so many years does not furnish sufficient evidence of ratification, what evidence less than a deed in writing will establish it?

As we have said before, these contracts, though spoken of as "illegal," "void," etc., have nevertheless always been, as in Ledyard v. Brown, held and treated as voidable only and not really void. Hence, being voidable, they might not be specifically enforced, as held in Hunt v. Robinson, 1 Texas, 748, unless, as held in Hunt v. Turner, 9 Texas, 385, upon equities arising subsequent to their execution. In this last case the court, after reciting the fact that Hunt's heirs after coming of age had disposed of the land owned by Robinson as the consideration for a bond for title made to him by Hunt, said: "This can not be regarded in any other light than a virtual ratification of the contract after all legal disability had been removed."

This same case places this class of contracts on the same footing as one made by an infant. The court said: "The rule is well established that a party to an illegal contract will not be permitted to avail himself of the illegality until he restores to the other party all that had been received from him on such illegal contract; that so long as he continues to hold on to and enjoy the advantages of the contract he shall not be allowed to set up to his advantage its nullity. And it is held that this rule is operative against *femes covert* and infants." Two of the cases cited in support of this arose from contracts of infants.

With respect to these last contracts the doctrine is now well established that the failure of the infant to disaffirm, after coming of age, for a less period even than would bar by limitation, may be held a virtual ratification of the contract. How much stronger is the situation of the case at bar? All of the witnesses living at the time of the execution of the bond have perished, yet notwithstanding this and the lapse of more than half a century, there remains strong and irrefutable evidence of affirmation. David Clark's widow, who owned half of the land as community, never entered it on the inventory of the estate. As administratrix she made the deed to Chriesman without objection. She lived not far from the land until she died, in 1882, and never made any claim to it. She never paid any taxes on it. Clark's only son died without having made any claim to it. Whether or not the doctrine of the early court holding these contracts voidable be strictly logical, as said by Justice Moore in Ledyard v. Brown, it is now too well established to be assailed.

3. Suppose it be granted that the Probate Court of Washington County had no jurisdiction to render the decree in favor of Chriesman —a question which the court failed to decide—then we submit that the deed made by the widow of David Clark, as administratrix, has the effect to create an estate by way of estoppel as against her devisees and the heirs of David Clark. The land was community property. The consideration of the bond constituted a valid debt of the community.

As survivor, she had the right to sell and convey the land for the payment of debts, and her deed would, under such circumstances, convey perfect title. The grounds of this estoppel are stronger than in Poor v. Robinson, 10 Massachusetts, 131, 136, where a deed made by executors was given that effect. This case was approved in Heard v. Hall, 16 Pickering, 460, which has in turn been approved by this court in Dooly v. Montgomery, 72 Texas, 429; Carothers v. Alexander, 74 Texas, 309; Henderson v. Lindley, 75 Texas, 185.

4. If this case be remanded in accordance with the opinion heretofore delivered, the question as to the jurisdiction of the Probate Court must necessarily come before the court again. Its decision now, if adverse to appellants, would save them much labor and expense upon another trial, and if in their favor would of course entitle them to have judgment rendered here, without respect to other questions in the case. We believe the Probate Courts of that day frequently exercised this jurisdiction with the approval and under the suggestion and practice of lawyers at that time most familiar with the civil law and practice under it in Louisiana. What the rules of practice were in that day, however, and the necessity that gave them birth can not now be ascertained with accuracy. For these reasons proceedings in these courts are not to be readily set aside, and every presumption ought to be indulged in their favor; as held in Burdett v. Sillsbe, 15 Texas, 604, in which case Justice Wheeler, quoting from an opinion of the Supreme Court of Pennsylvania, where an attack was made on a sale under a decree of a Court of Chancery, said: "You blow up with gunpowder the whole jurisdiction; and here, if the protection be denied to honest purchasers, you lay a train of gunpowder through the whole State, and this decision would be a signal to set fire to it, for nothing has been more irregular than the practice of these courts generally. There may be exceptions, but they are very rare. * * * Terms that would very aptly describe and characterize the proceedings of the Probate Courts of this country, especially before their proceedings had been made the subject of much revision and examination in the appellate court, and when the importance of the rights dependent upon them and the laws governing them were less understood or thought of than at present."

One of the first things done by the provisional government was to provide for the holding of courts. Sayles' Early Laws of Texas, art. 212. Section 3 of this decree prescribes that "all proceedings relative to succession, matters of probate, etc., shall be regulated and governed agreeably to the principles and laws in similar cases in the State of Louisiana." Section 4 requires the first judge of each municipality to hold Probate Courts on the first Monday in every month. That the first judges and alcaldes of the several municipalities exercised this

jurisdiction and decreed performance of bonds for title prior to this date appears in the history of the case of Bohanan v. Hans, 26 Texas, 446. The act of Congress of December 20, 1836, first established the County Courts, succeeding the courts of the former government. Sayles' Early Laws of Texas, art. 263. Section 6 of this act confers original jurisdiction of all suits and actions for the recovery of money founded on any contract, etc., where the sum demanded shall exceed $100, and gives concurrent jurisdiction with District Courts in all such suits and actions. The only exception to the jurisdiction is that no suit relative to the title of land shall be tried in said court.

This general jurisdiction continued until January 26, 1839, when it was limited to probate matters only. Sayles' Early Laws of Texas, art. 653. Section 24 enumerates the specific powers conferred in matters of probate first, and then adds the following sweeping words: "And said chief justice shall have full jurisdiction of all testamentary and other matters pertaining to a Probate Court." Section 31 provides that all probate business heretofore pending before the primary courts "shall be transferred to and completed in the Probate Courts" established by this act.

It seems plain from the provisions of the statute that the judges of the "first instance," or "first judges," exercised probate jurisdiction both under the Mexican and provisional governments, as well as under the Republic, to the time of the passage of this act. Proceedings upon bonds for title against estates of deceased persons, as we have seen in Bohanan v. Hans, were maintained in these Probate Courts, and have always been considered proper subjects of probate jurisdiction. They have never been treated as involving the title to land. The statute of 1848 and practice thereunder, instead of declaring the new rule as contended for by appellee, is simply declaratory of the old one, and was intended to set the matter finally at rest.

Now, therefore, when the statute of 1836 gave this "full jurisdiction of all testamentary and other matters pertaining to a Probate Court," it would seem clear that the enforcement of these bonds was one of the "other matters," jurisdiction of which was intended should be exercised. This conclusion is strengthened also by the provision transferring all probate business of the primary courts to this newly organized County Court. This being, as we have seen, a matter of probate jurisdiction in said courts, necessarily passed into the County Courts. We have not had access to any authorities which give any information as to the "principles and laws" with respect to probate jurisdiction prevailing in the State of Louisiana in 1836. What this probate jurisdiction was in that day may have been, and most likely was, the subject of as much doubt as the jurisdiction of our own courts has been since the adoption of the present Constitution. But it is evident that learned

lawyers of that time, as was the late Wilson Y. McFarland, who instituted the proceedings under which appellants claim title, thought this jurisdiction existed.

[The above was upon motion for rehearing, and upon which the opinion was delivered. The original brief for appellants did not reach the Reporter.]

*T. J. Swearingen,* for appellees.—The judgment ought to be affirmed, notwithstanding the court below found that some time between December 31, 1838, and February 28, 1842, an order was made by the Probate Court of Washington County in the estate of David Clark, deceased, based upon the McDaniel conveyance or bond for title, directing the administratrix Bersheba Clark to execute a deed to Horatio Chriesman for the land mentioned in said instrument, and that she executed a deed in conformity with said order:

1. Because between said dates the Probate Court was not legally clothed with power to enforce specific performance of contracts for the conveyance of land.

Under the Act of December 20, 1836, the jurisdiction of the Probate Court is defined. No authority is there given to decree a specific performance of contract for the conveyance of land. It provides that "the chief justice shall have full jurisdiction of all testamentary and other matters pertaining to a Probate Court."

It was held in Kegans v. Allcorn, 9 Texas, 25, that a suit for specific performance of contract to convey land, against the widow of the deceased obligor, was not a proceeding relative to a succession; because it was a suit between the estate and the plaintiff, not in relation to the administration or settlement of the estate, but in relation to property that once belonged to the deceased and had been sold.

The Legislature did not confer jurisdiction upon the County Court to decree performance of contract for conveyance of land until the passage of the Act of 1844, and then only in cases when applied for by the administrator of the estate, and when it could be shown to the satisfaction of the court that the order would be beneficial to the estate. In all other cases the District Court alone had jurisdiction. Hart. Dig., arts. 1070, 1071.

This remained the law of the land up to the reorganization of the Probate Court in 1848, when jurisdiction to enforce specific performance of contracts for conveyance of land was conferred upon the County Court. Hart. Dig., art. 1162; Peters v. Phillips, 19 Texas, 70; Booth v. Todd, 8 Texas, 137; Francis v. Northcote, 6 Texas, 185.

The writer has been able to find but one case in which the County Court has entertained a petition for the specific performance of a bond for the conveyance of land prior to the passage of the above acts. That

is the case of Jones v. Huff, decided by Justice Ogden and reported in 36 Texas. This decision is made on the assumption that "in 1837 the Probate Court had legal authority to decree a specific performance of an executory contract for the conveyance of land; entered into by a person who had subsequent to the execution of the contract died, and whose estate was being administered in the county." "That this had been repeatedly decided," and in support of the statement cites Bohanan v. Hans, 26 Texas, 445; Box v. Lawrence, 14 Texas, 545; Shannon v. Taylor, 16 Texas, 419; Mills v. Alexander, 21 Texas, 154; Thompson v. Duncan, 1 Texas, 485; Menifee v. Hamilton, 32 Texas, 495.

An examination of the cases will show that they do not support the proposition, but on the contrary that the District Court exercised the jurisdiction in question until after the jurisdiction was transferred to the Probate Court in 1848.

In Bohanan v. Hans the decree was rendered by the judge of the first instance.

In Box v. Lawrence the sale of the half league was not alleged to have been made prior to the issuance of title, and was acknowledged and ratified by the grantor. The only proceeding in the Probate Court which was commented on in the opinion was the probate of the will of Bolin, which, though it contained nothing more than the original validity of the will, was what it purported to be and was conclusive on that question. The title was sustained because there was nothing appearing in the case to bring it within the principle of the case of Robinson's Heirs v. Hunt's Heirs, and the cases which affirm the principle of that case.

In Shannon v. Taylor the suit for specific enforcement was brought in the District Court.

In Mills v. Alexander the suit was in the District Court, not in the County Court. In this case Horatio Chriesman filed his suit in time to obtain judgment at the November Term, 1839, and in this instance it was filed in the District Court.

His petition in the case at bar was filed in the County Court of Washington County, November Term, 1838. If he in the meantime discovered that the Probate Court could not take jurisdiction of a suit to enforce contracts for the conveyance of land, this would account for the inability to produce the record without burning the "tin box" for that purpose.

Thompson v. Duncan treats of the right of the administrator to sue for land, and nothing else.

In Menifee v. Hamilton the sale made by Mrs. Rangil purported to settle account of the guardian, and was approved by the judge of the first instance, who received the minor's share.

It will be seen from an examination of these authorities that they do not sustain the statement of Judge Ogden, upon which alone said statement of the law rests for its support.

2. The judgment ought to be affirmed because it appears affirmatively from the findings of the court that no debts existed against the estate of David Clark; that there was no necessity for administration on his estate, and that all the proceedings were therefore null. Withers v. Patterson, 27 Texas, 491; Blair v. Cisneros, 10 Texas, 47; Harwood v. Wylie, 70 Texas, 538.

STAYTON, CHIEF JUSTICE.—On May 7, 1831, David Clark obtained a grant of one league of land as a colonist, and on October 8, 1833, he by an instrument in writing conveyed one-fourth of that land to Benjamin McDaniel, and therein bound himself to give such further assurance of title as might be necessary so soon as the laws would permit him to do so.

At the time the grant was applied for David Clark was a married man, and appellees brought this action, as his heirs and as residuary devisees of his wife against appellants, who claim under McDaniel, to recover the land to which the conveyance made by Clark relates.

David Clark was killed early in the year 1837, and administration on his estate was had by his widow in the Probate Court for Washington County.

During the year 1837 application was made to the Probate Court for specific performance of the contract of October 8, 1833, and it appears from the findings of the court that between December 31, 1838, and February 28, 1842, that court directed a conveyance to be made by the administratrix, and that in conformity with this order a deed was executed by her. These findings were upon evidence circumstantial in nature, it appearing that the records of the Probate Court for the period intervening the dates named had been lost or destroyed, and there being no direct evidence that a deed was executed by the administratrix.

The court below correctly held that the conveyance from Clark to McDaniel was prohibited by law, and further held that no equities were shown to defeat the plaintiff's legal title, and therefore entered judgment in their favor.

It is now insisted the judgment should have been for the defendants on the findings that the Probate Court decreed specific performance, in pursuance of which a deed was made by the administratrix.

Under these findings a judgment should have been entered for the defendants if the Probate Court had jurisdiction to decree specific performance of the contract; for in such case no inquiry in this action could now be made as to the propriety of such a decree.

Had that court jurisdiction to make such a decree at the time it is found to have been made? The Constitution of the Republic simply provided that there should be a County Court in each county, but did not define their jurisdiction. Constitution, art. 4, sec. 10.

The Act of December 20, 1836, conferred on County Courts power to probate wills, grant letters of administration, appoint guardians, and to examine and settle the accounts of executors, administrators, and guardians, and "full jurisdiction of all testamentary and other matters appertaining to a Probate Court within their respective counties." Sayles' Early Laws, art. 263.

The Act of February 5, 1840, more fully regulated the duties of the Probate Courts and prescribed their mode of procedure than did the former law, but neither of them expressly conferred the power to decree and enforce specific performance of contracts to convey land made by a person whose estate might be in course of administration. Sayles' Early Laws, 736.

The Act of February 2, 1844, seems to have been the first act that conferred such a power. Sayles' Early Laws, 1341.

This power, however, seems to have been conferred on Probate Courts only in cases in which application was made by an executor, administrator, or guardian, when it was made to appear upon "satisfactory evidence that a compliance with the requirements of said bond, obligation, or contract would be beneficial to the interest of said estate." The fourth and fifth sections of that act provide that actions brought by the holders of such obligations against a deceased person, or by the executors or administrators of the estate of a deceased person, should be brought in the District Courts.

These are believed to be all the laws in force during the period in which transpired the facts on which appellants base their right to recover on a decree directing specific performance of the contract between Clark and McDaniel, other than Decree No. 81, of January 22, 1836, which provided that all proceedings relative to successions and matters of probate should be regulated and governed agreeably to the principles and laws in similar cases in the State of Louisiana. Sayles' Early Laws, 212.

It seems to be contended that the decree last referred to conferred such a power, and that it was exercised by the primary judges.

If it could be held that this decree was intended to confer on the courts exercising probate powers such jurisdiction as like courts exercised in Louisiana, and was not intended solely to regulate the procedure, and that it was in force at date the decree may have been made, then this would not benefit appellant's case, for it is evident that such courts in Louisiana did not have power to enforce specific performance of contracts to convey land made by a deceased person. Rhodes v. Rhodes, 3 La., 308; O'Donogan v. Knox, 11 La., 388.

There are many cases in which lands were sold under judgments rendered by judges of first instance even when a defendant was represented by a curator, but this was under the general jurisdiction of the courts over which these judges presided, and not under the powers exercised by them in probate proceedings; and we are unaware of any case in which it was held that primary judges in the exercise of such probate jurisdiction as was conferred upon them had power to decree specific performance of an agreement to convey land.

In Jones v. Huff, 36 Texas, 683, it was held that in 1837 Probate Courts had such a power, but the cases cited to support the opinion do not sustain it.

Bohanan v. Hans was a case in which, in a suit pending before a primary judge to enforce specific performance of a contract to convey land made by a person then living, a curator was appointed to represent the absent defendant and on hearing to make a deed; and the proceedings were held to be lawful and not subject to collateral attack.

Box v. Lawrence was an action in the District Court, and there was no such question in it.

In Shannon v. Taylor the probate proceedings there referred to occurred in September, 1845, but the decree for specific performance had been rendered in a District Court in 1841.

The decree for specific performance referred to in Mills v. Alexander was rendered by a District Court in 1839.

In Thompson v. Duncan it was decided that an administrator might maintain an action to recover land belonging to the estate represented by him.

There was no such question involved in Manifee v. Hamilton, 32 Texas, 495.

Kegans v. Allcorn was an action for specific performance brought against an administratrix in a District Court, in which it was decided that the decree adopting the procedure of Louisiana in the settlement of successions had no application, because it "was not a proceeding relative to a succession within the terms and meaning of the ordinance."

If a suit for specific performance of a contract to convey land is not a proceeding relative to a succession when brought in a District Court, it is not when sought to be enforced in some other court, for the court in which a matter is litigated can not give character to the proceeding. If the courts that exercised probate jurisdiction prior to the earlier acts before referred to had, under such general grants of probate powers, exercised the power to enforce specific performance of written contracts to convey land made by deceased persons, then a broader meaning might be given to the statutes referred to than can be when no such power was recognized to exist under former laws.

Section 53 of the Act of March 20, 1848, seems to have been the first law which permitted the holder of a contract to convey land to have

specific performance through ·a decree of a Probate Court, and under
that the remedy was not a satisfactory one, for it was open to re-exami-
nation, as was such a decree when obtained by an executor or adminis-
trator under the Act of February 2, 1844.   These acts both indicate the
reluctance of the Legislature to confer such a power on the Probate
Courts at all, and recognize the better adaptation of the District Courts
to try such issues, which may be as persistently litigated as any other.

In Jones v. Taylor, 7 Texas, 244, and in Peters v. Phillips, 19 Texas,
70, it was said that the power in question conferred by the Act of March
20, 1848, was special and limited.

In Booth v. Todd, 8 Texas, 137, it was held that the general grant
of probate powers would not confer on County Courts the power to de-
cide litigated accounts between the representatives of parties, and it
was said that there was perhaps "but one case in which litigation on a
claim against the deceased is conducted before the Probate Court, and
that is for the enforcement of an executory contract to convey title to
lands."   The source of this power was not in the general grant of pro-
bate jurisdiction, but in the statutes which specifically gave it.

In Hooper v. Hall, 30 Texas, 154, the question of the power of a Pro-
bate Court, in 1842, to decree specific performance of a contract to con-
vey lands was considered, and it was held that such a power did not
then exist.   Speaking of the act of February 5, 1840, it was said:
"This law gave to the Probate Court authority to order the partition
of lands held in common by the succession and the applicant for such
partition; but the court had no jurisdiction in cases for specific per-
formance of contracts, or to hear and determine upon the validity of
lands or other important titles.   It was not until the passage of this
Act of February 2, 1844 (Hart. Dig., art., 1070; Pasch. Dig., note 487,
p. 315), that the court was invested with that power."

There being no grant of such a power to Probate Courts until Feb-
ruary 2, 1844, it follows that it did not exist at the time the court be-
low found that such a decree was entered.

This court would presume that such a state of facts was shown as
authorized such a decree as the court below found was rendered, if the
jurisdiction of the court was shown, but in the absence of jurisdiction,
whatsoever may have been the equities between the parties, the decree
binds no person or thing.

The deed made by the administratrix in pursuance of the decree of
the Probate Court can not be given the effect which might otherwise
be given to it as the deed of the survivor of the community, and it is
not now necessary to determine whether any effect may be given to it.

It has been held that although such contracts as that relied on in
this case can not be enforced, equities may arise between the parties
such as to preclude a recovery by the maker of such a contract or his

heirs, and we are asked by appellants to render a judgment in their favor upon the assumption that the record shows such equities.

There is no statement of facts but only conclusions of the court, and we do not think it would be just to either party herein to enter a judgment on the record before us.

In the former disposition of the case it was directed that the judgment be reversed and the cause remanded, when if appellees desire to do so they may tender the purchase money with interest, without which, under the former rulings of this court, they can not recover. Hunt v. Turner, 9 Texas, 385; Mills v. Alexander, 21 Texas, 154; Ledyard v. Brown, 27 Texas, 405.

This we still deem proper in view of the pleadings and the manner in which the cause was tried and here presented, and when the case reaches the trial court both parties will be at liberty to pursue such course in the further conduct of the litigation as to them may seem proper and as may be lawful.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 20, 1891.