SANDMEYER et al. v. DOLIJSI et al.
(No: 7385.)

(Court of Civil Appeals of Texas. Galveston.
March 22, 1918. Rehearing Denied
May 2, 1918.)

1. EVIDENCE ☞353(3) — RECITALS IN VOID
JUDGMENT AND DEED.

Though because of lack of power of the pro-
bate court to decree specific performance of a
contract to convey land, its order that D.'s ad-
ministrator make title to land to O., and the
administrator's deed in compliance therewith,
are void, the recitals therein that D. held the
title in trust for O., as shown by a certain in-
strument executed by D., are admissible as cir-
cumstances tending to prove that D. acquired
the title for O., and held it in trust for him, and
by an instrument in writing, which had been
lost, acknowledged the beneficial title to be in O.

2. EVIDENCE ☞186(2) — LOST PAPER—SEC-
ONDARY EVIDENCE.

A paper being lost so that it could be prov-
ed by parol, a written statement of its contents,
made at time of its examination by witness,
which he could swear was correct, was admissi-
ble.

3. EVIDENCE ☞353(3)—RECITALS IN ANCIENT
INSTRUMENTS.

Recitals in ancient instruments: Petition
of O. to court for D.'s administrator to make
deed to O., and deed of C. to O., that D. held
the title in trust for O. and C.—are, in action
involving title, not objectionable as self-serving
declarations, hearsay, and immaterial.

4. INFANTS ☞24 — ADVERSE POSSESSION —
RUNNING OF STATUTE.

Where adverse possession commenced in the
lifetime of the owner, minority of his heirs does
not affect the bar or interrupt running of the
statute.

5. ADVERSE POSSESSION ☞101 — POSSESSION
OF ONE OF TWO CONVEYED TRACTS.

Where deed conveys two separate tracts,
one farm land, the other woodland, actual pos-
session by the grantee of the farm land only is
not sufficient to continue the grantor's adverse
possession as to the woodland.

Appeal from District Court, Fort Bend
County; Saml. J. Styles, Judge.

Action by J. F. Sandmeyer and others
against Frank Dolijsi and others. From an
adverse judgment, plaintiffs appeal. Af-
firmed.

Carothers & Brown and G. P. Dougherty,
all of Houston, for appellants. C. G. Krue-
ger, of Bellville; D. R. Peareson, of Rich-
mond, and Lane, Wolters & Storey, of Hous-
ton, for appellees.

PLEASANTS, C. J. This is an action of
trespass to try title brought by appellants,
heirs of E. J. Sandmeyer, deceased, against
Frank Dolijsi and 62 other named defend-
ants, appellees herein, to recover title and
possession of a tract of 3,928 acres of land
on the Jeremiah Scanlan O'Connor grant in
Ft. Bend county, being all of said grant ex-
cept a tract of 500 acres described in the
petition.

In addition to the necessary allegations
in a suit of trespass to try title, plaintiffs'
petition alleges that they have title to this
land under a chain of title emanating from

Thomas Davis, and further alleges that the
defendants also claim title to the land in
controversy by chain of title from Thomas
Davis.

Defendants replied to plaintiffs' petition,
and disclaimed as to all of the land except
the specific tract claimed by each defendant,
and as to these specific tracts each defendant
pleaded the general denial, and not guilty.
All of the defendants further specially plead-
ed that one J. W. Collins acquired by two
certain instruments the title to this land
from one Walter C. White, and that on Jan-
uary 29, 1838, the said John W. Collins exe-
cuted and delivered to George Opdyke,
George Carrico, and Andrew Carrico, a firm
known as Opdyke, Carrico & Co., his instru-
ment in writing conveying to them, either
severally or jointly, all his right, title, and
interest in and to the said land; that said
instrument was lost, and defendants, after
diligent search, were unable to find it, and
notified plaintiffs to produce the same upon
the trial, or secondary evidence would be
introduced to prove its contents; that de-
fendants have a regular chain of title from
George Opdyke, George Carrico, and Andrew
Carrico, conveying all of the interest acquir-
ed by them in said land; that thereafter,
for the use and benefit of the said Collins
and his assigns, the said Davis applied to
the probate court of Brazoria county, Tex.,
and obtained from said court an order, di-
recting the administrator of said estate to
execute deed to the said Davis for said land,
and that by this proceeding whatever title
the said Davis acquired was acquired for the
use and benefit of the then holder of the Col-
lins title to said land. Defendants further
alleged that thereafter, on June 7, 1838, the
said Davis executed and delivered to the
said Opdyke, Carrico & Co. one or more in-
struments acknowledging that he held the
title to said land in his name, as agent for
the said Opdyke, Carrico & Co.; that they
were the owners of said land, and he gave
them his bond in the sum of $15,000 to se-
cure the said firm in the ownership of said
land, and to secure them in the faithful per-
formance of his duties as agent, and to con-
vey to them the title to said land; that the
said George Opdyke, who had then acquired
all of the title of George and Andrew Carri-
co, applied to the probate court of Ft. Bend
county, Tex., on May 20, 1842, for an order,
directing the administrator of the estate of
Thomas Davis, deceased, to convey to him
the said land, alleging that said Davis held
the land for Opdyke, Carrico & Co., and that
he, George Opdyke, was the owner of said
land; that the probate court in May, 1842,
ordered the executor of Thomas Davis, de-
ceased, to convey to George Opdyke the land
in suit, reciting that it appeared from the
instrument executed by Thomas Davis on
June 7, 1838, that Opdyke was the owner of
the land, and that thereafter, in obedience

to said judgment, the executor executed and delivered deed to Opdyke for the land.

The defendant Frank Patek pleaded res adjudicata as to the land claimed by him, alleging a prior valid judgment of the district court of Ft. Bend county, Tex., in his favor for the land described in his answer, and against Jeremiah Scanlan O'Connor, E. J. Sandmeyer, J. W. Collins, and Walter C. White, and other defendants, and the unknown heirs of each of said defendants.

The defendants also pleaded other matters respecting the title, but, in view of the conclusions of fact and of law hereafter set out, this court deems it unnecessary to make special mention of such additional pleadings. Defendants also pleaded the statutes of limitation of three, five, and ten years, and pleaded improvements in good faith.

By supplemental petition plaintiffs alleged the minority of the plaintiffs, and that defendant John Moser was not a resident citizen of the state of Texas during the time which he claimed to be the owner of the tracts claimed by him in his answer.

The trial in the court below without a jury resulted in a judgment in favor of defendants. The trial court filed the following findings of fact:

"The land in suit, which is situated in Ft. Bend county on left margin of Bernard river, was granted by the Mexican government to Jeremiah Scanlan O'Connor on the 9th day of April, 1831, by instrument containing the following description: 'Situated on the left margin of the eastern branch of the creek called San Bernardo, and known as league No. 6; from a landmark set on said margin of the creek, and serving as the upper corner of the league surveyed and numbered 5, from which an elm marked AB bears north 65 deg. west 6 varas distant, and another elm marked X bears south, a line was run east 5220 vrs. to a mound of earth in the prairie; thence north 3900 varas to another mound of earth; thence west 8080 varas to the creek at a landmark from which a wateroak marked B bears north 5 east 5 varas distant, and another marked A bears north 60 east 10 vrs. distant; thence following the meanders of said San Bernardo down to the place of beginning, and comprising one league of land.'

"(3) William Ryon was appointed administrator de bonis non upon the estate of Thomas Davis, deceased, at the November term, 1852, by the probate court of Ft. Bend county, Tex., and qualified as such on November 27, 1852, by filing oath and bond. He returned an inventory of said estate on the 29th day of November, 1852.

"(4) On the 30th day of December, 1856, the said Wm. Ryon applied to said court for an order to sell the land in suit, which order was made by said court at its December term, 1856. The report of sale by said administrator was made and confirmed by the court on the 24th day of February, 1857, directing deed to be made to the purchaser, C. C. Herbert, who bid therefor the sum of $25, whenever he complied with the terms of purchase. These orders are regular, and sufficiently describe the land in suit. On May 25, 1857, the said administrator de bonis non, pursuant to said orders, executed and delivered to C. C. Herbert his deed describing said land, which deed recited the payment of the $25, the bid for said land.

"(5) At its October term, 1867, the county court of Colorado county, Tex., in the estate of C. C. Herbert, appointed Stephen Herbert administrator of said estate, and he duly qualified as such.

"(6) On May 22, 1877, the county court of Colorado county, Tex., in the succession of C. C. Herbert, deceased, ordered said administrator to sell at public auction, in Colorado county, Tex., all of the right, title, claim, and interest of C. C. Herbert, deceased, and his estate in and to the following property, to wit: A league of land situated in the county of Ft. Bend, granted to Jeremiah Scanlan O'Connor.

"(7) On July 16, 1877, the said court confirmed a sale by said administrator to E. J. Sandmeyer, and said order contained the following description, to wit: 'All the right, claim, and interest of C. C. Herbert, deceased, and his estate in and to the following lands: League of land situated in Fort Bend county, Texas, granted to Scanlan O'Connor, bought by E. J. Sandmeyer for $50.00.' Neither an application for sale nor a report of sale were shown in evidence.

"(8) On July 17, 1877, said administrator of the estate of C. C. Herbert executed and delivered deed to E. J. Sandmeyer, containing the following description: 'All the right, title, claim and interest of C. C. Herbert, and of his estate, in and to the lands described in said order of confirmation.' Said deed purported to recite the said order, and in said recital gave the following description: 'League of land situated in the county of Fort Bend, Texas, granted to Scanlan O'Connor, bought by E. J. Sandmeyer for $50.00.'

"(9) E. J. Sandmeyer married in 1881, and died October 13, 1895, leaving surviving him as his only descendants the following named children, who are plaintiffs herein, to wit: J. F. Sandmeyer, who was born September 4, 1882; E. J. Sandmeyer, who was born December 13, 1884; Nell Sandmeyer Allen, who was born October 13, 1886; Genevieve Sandmeyer Montgomery, who was born January 16, 1889; Loraine Patton, who was born September 8, 1891; and Ida V. Sandmeyer, who was born November 12, 1894. The wife of the said E. J. Sandmeyer died January 5, 1895. The plaintiffs are all the heirs of E. J. Sandmeyer.

"(10) No evidence was shown connecting Thomas Davis or anyone else with the original grantee, Jeremiah Scanlan O'Connor.

"(11) On November 22, 1834, W. C. White executed to J. W. Collins before William Boswell, a notary public at New Orleans, an instrument the material parts of which are as follows: 'Walter Caldwell White, a citizen of the state of Coahuila and Texas, United States of Mexico, who declared & acknowledged that he is justly and truely indebted unto John William Collins, a citizen of the United States of America, residing in the city of New Orleans, state of Louisiana, in the full sum of thirty-seven thousand, four hundred and sixty-eight dollars, and eighty-one cents, lawful money of the United States of America, for the payment of which sum he has subscribed three several promissory notes, made to the order of John W. Collins, each for the sum of twelve thousand, four hundred and eighty-nine dollars and sixty cents, and one-third of a cent, all dated this day, and payable respectively at one, two and three years with interest thereon at and after the rate of six per centum per annum, from the day of their falling due until paid.' 'And in order to secure the payment of said promissory notes and all interest which shall or may accrue thereon at the rate aforesaid, he, the said Walter C. White, does, for himself and for his heirs, specially mortgage and hypothecate unto the said John W. Collins present as aforesaid, and accepting his heirs and assigns the following described property, to wit: (1) One tract of land situate, lying and being on the left bank of the river Main Bernard measuring one league,

containing about four thousand, four hundred and forty-four acres, and designated as number six.'

"(12) On the same date, and at the same time, and as a part of the same transaction, the said Walter C. White and J. W. Collins before the same notary executed an instrument, the material parts of which are as follows: '* * * Mr. John William Collins, of this city, who declared that whereas by act passed before the undersigned notary on the date hereof, Mr. Walter Caldwell White, a citizen of the state of Coahuila and Texas, in the United States of Mexico, granted unto him, the said appearer, a mortgage on two certain tracts of land, more particularly described in said mortgage (and to which reference is hereby expressly made), to secure the payment of three several promissory notes, each for the sum of twelve thousand, four hundred and eighty-nine dollars, and sixty cents, and one-third of a cent, all dated this day, and payable respectively at one, two and three years, with interest thereon at and after the rate of six per centum per annum from the date of their respectively falling due until paid, which notes have been identified with this act, as well as with the said act of mortgage. And whereas the said John W. Collins declared that being perfectly satisfied with the security in and by the mortgage release, discharge and renounce all claims on, or against the said White personally as drawer of said notes, or from the payment of the same or any part thereof, a reserving only of all right of recourse on the said lands by virtue of the afore-recited mortgage. Therefore, be it known that the said John W. Collins and Walter C. White have covenanted and agreed to and with each other, that whenever the said White shall make a title of said lands to the person or persons the said John W. Collins shall designate (he or they being citizens of the United States of Mexico), that then, in such case and event, he, the said John W. Collins, shall and will deliver up to the said White all and singular the three afore-recited promissory notes duly canceled and acquitted, and that he, the said White shall be forever released from all claims or demands which he, the said Collins, ever had by reason of said mortgage or promissory notes, and in the meantime, he, the said Collins, binds himself to keep said notes in his possession, and will not transfer, assign or discount the same, but will always have them under his control, to deliver up at a moment's warning whenever the said White shall make the transfer of said lands as afore recited.'

"(13) The instruments described in paragraphs X and XI hereof were parts of the same transaction, and are taken as one instrument.

"(14) On the 29th day of January, 1838, the said John W. Collins, by an instrument which was lost and not recorded, conveyed to Andrew Carrico, George Carrico, and George Opdyke all of the interest in the land suit acquired by him.

"(15) On the same date as the conveyance of his instrument to Opdyke, Carrico & Co., mentioned in the next preceding paragraph, to wit, January 29, 1838, the said John W. Collins executed before the said Boswell to the said Thomas Davis a power of attorney, the material parts of which are as follows: 'By the act of procuration be it known that this day before me, William Boswell, a notary public in and for this city of New Orleans, duly commissioned and sworn, personally came and appeared Mr. John William Collins, of this city, who declared that whereas by act passed before the undersigned notary on the twenty-second day of November, eighteen hundred & thirty-four, Mr. Walter Caldwell White, of Texas, granted a mortgage in favor of this appearer on 1. One tract of land situated on the left bank of the River Main Bernard, measuring one league, containing four thousand, four hundred and forty-four acres, & designated by the number six. * * * To secure the payment of thirty-seven thousand, four hundred & sixty-eight dollars & eighty-one cents, for which he, the said White, subscribed three several promissory notes, to the order of the said John W. Collins, each for the sum of twelve thousand, four hundred & eighty-nine dollars and sixty cents, and one-third of a cent, dated the twenty-second day of November, eighteen hundred and thirty, and payable respectively at one, two and three years, with interest thereon at and after the rate of six per centum per annum, from the day of their falling due until paid. By an act passed before the undersigned notary on the same day, the said Walter C. White bound himself to sell and convey the said lands to any person or persons that the said Collins shall designate, by returning unto him the three promissory notes above described duly canceled. Now, therefore, in conformity with the said act of mortgage and agreement, he, the said John W. Collins, does hereby designate Mr. Thomas Davis, a citizen of the Republic of Texas, as the person in whose name the transfer of said property is to be made, and for the purpose he, the said John W. Collins, does hereby appoint and in his place and stead put the said Thomas Davis to be his true & lawful attorney, granting unto him full power for him & in his name to ask, demand, sue and obtain of and from the testamentary executor or executors of said Walter White or of and from whomsoever else the same doth or may concern, a title in his name, or in the name of any person which he may designate, and upon obtaining promissory notes to the person who shall execute the same; to appear before all courts of law or equity, there to do & prosecute as occasion shall require, to compound and agree for the same by arbitration or otherwise as the said attorney shall think fit; * * * also, with power of substitution and revocation, the said constituent agreeing to ratify and confirm whatsoever the said attorney shall lawfully do by virtue.'

"(16) Davis did not acquire from Collins any real interest or title to the White notes or said land. Whatever transfer, if any, was made to him of said notes or said land was made for the purpose of enabling him to procure the White title to said land as agent and trustee for Opdyke, Carrico & Co., and for their use and benefit, and not for his individual use and benefit.

"(17) Acting under the said power of attorney to him from John W. Collins, and in behalf of the assignee of the said Collins, to wit, Opdyke, Carrico & Co., the said Thos. Davis, for the purpose of acquiring the title to the land in suit for the use and benefit of said Opdyke, Carrico & Co., and with the intention of holding the title thereto in trust for the said Opdyke, Carrico & Co., applied to the probate court of Brazoria county, Tex., for an order of said court directing the administrator of Walter C. White to execute to said Davis, as agent and trustee for said Opdyke, Carrico & Co., a deed to said land. Prior to the 4th day of June, 1838, the said court ordered the administrator of the estate of Walter C. White to execute to Thos. Davis full and complete title of all the right, title, and interest which the said Walter C. White had in the land in suit, but no deed from the said administrator was shown.

"(18) I find as a fact that thereafter, on June 7, 1838, the said Thos. Davis, supposing that he had by said probate proceedings in the White estate in the Brazoria county court acquired the title to said land, executed and delivered to Opdyke, Carrico & Co. one or more instruments in writing of date June 7, 1838, in which he acknowledged that he held the land in suit in trust and as agent of the said land, and in

which instrument or instruments he gave his bond in the sum of $15,000 to secure the said Opdyke, Carrico & Co. in the faithful performance of his duties as agent, and obligated himself, his heirs and executors, to convey said land to the said Opdyke, Carrico & Co., or to whomsoever they might direct. I further find that the instrument or instruments were not a mortgage, but were a written declaration of trust, as above set forth. I find that said instrument or instruments of date June 7, 1838, are lost, and that proper predicate has been laid for the proof of its or their execution and contents by circumstantial evidence.

"(19) I further find as a fact that whatever title the said Thos. Davis acquired in said land was acquired in trust, and as agent for Opdyke, Carrico & Co., and that whatever title he held at the time of his death was held in trust and as agent for Opdyke, Carrico & Co., and that the real title to said land at that time was held by Opdyke, Carrico & Co.

"(20) On March 4, 1840, George Carrico, one of the members of the firm of Opdyke, Carrico & Co., conveyed to George Opdyke all of his interest in the land in suit and White notes, and on March 7, 1840, Andrew Carrico, the other member of said firm, conveyed to said George Opdyke all of his interest in said land and said White notes. The said firm was composed of three parties, George Carrico, Andrew Carrico, and George Opdyke.

"(21) On May 20, 1842, the said George Opdyke applied to the county court of Ft. Bend county, Tex., alleging, among other things, that the said Davis, at the time of his death, held, as agent for Andrew Carrico, George Carrico, and George Opdyke, the title to the land in suit; that he had acquired the interest of said Carrico, and prayed the court to order Aldridge, the executor of said Davis, to make full and complete title to said lands to said petitioner.

"(22) At the May term, 1842, of said court, a decree was entered, ordering William B. Aldridge, as executor of the succession of Thos. Davis, deceased, he having been previously by said court appointed executor of the will and estate of Thos. Davis, deceased, and letters as such had issued to him, to convey unto George Opdyke the land in suit, and reciting that by an instrument signed by the said Thos. Davis, on the 7th day of June, 1838, it appeared that the said Carrico and Opdyke were the owners of said land. In pursuance to said order, the said Aldridge did on September 15, 1846, execute and deliver a deed to the said George Opdyke conveying the land in suit.

"(23) By various conveyances, the defendants have acquired all the title of George Opdyke in and to the various tracts of land claimed by them in their respective answers, the same awarded to them respectively by judgment herein shown.

"(24) The plaintiffs did not connect their claim of title to said land with the sovereignty of the soil.

"(25) The only title to said land which was ever acquired by the said Thos. Davis was whatever title he acquired under and by virtue of the said probate proceedings in the estate of Walter C. White, in Brazoria county, and whatever title he did acquire from any and all sources was acquired in trust and for the benefit of the said Opdyke, Carrico & Co., and not for his individual use and benefit.

"(26) The plaintiffs show no title in themselves or of and from either John W. Collins or Walter C. White, and did not show that Thos. Davis acquired any title.

"(27) The evidence shows that the plaintiffs claimed that Thos. Davis acquired title to said land by and through the said probate proceedings in the estate of Walter C. White in the probate court of Brazoria county, Tex.

"(28) Thos. Davis did not in fact by the said Brazoria county probate proceedings in estate of Walter C. White, deceased, or in any other way, acquire any title to said land.

"(29) I find as facts that Walter C. White did, on November 22, 1834, obligate and bind himself by written instrument duly executed and delivered, to convey to said John W. Collins, or whomsoever he should designate, the said J. S. O'Connor league of land in Ft. Bend county, and that said Collins obligated himself to surrender up said notes whenever said White so conveyed said land.

"(30) I further find as a fact that John W. Collins acquired all the title of White to said land.

"(31) R. A. Harvin, by mesne conveyances duly recorded in Ft. Bend county, Tex., acquired the title of George Opdyke to all land in suit except the 500 acres known as the Hackworth tract, among which was a deed dated January 1, 1887, filed September 19, 1887, from the Texas Land & Investment Company to R. A. Harvin. This deed was duly recorded in deed records of Ft. Bend county, Tex., on September 19, 1887. Under his deed, which accurately described said land R. A. Harvin held peaceable, actual, exclusive, adverse possession of all the land so conveyed to him, cultivating, using, and enjoying the same from January 1, 1887, until December 2, 1890.

"(32) On December 2, 1890 Francis Smith acquired the title of the said Harvin in the said 3,928 acres of said land by deed which was on the same date duly recorded in the deed records of Ft. Bend county, Tex. The said Francis Smith, by tenants, held peaceable, actual, adverse, and exclusive possession of said land from the date of said deed, cultivating, using and enjoying the same from said date until all of the land was sold out by him to various defendants, or the parties under whom they claim, as hereafter shown, he surrendering possession to the various purchasers as they purchased the respective tracts purchased.

"(33) I find as fact that, by reason of said actual adverse possession by Harvin and Smith, Francis Smith became vested with title to all of said 3,928 acres except such portions thereof as were sold by him prior to January 1, 1897. Inasmuch as there is continuity of possession and privity of title between said Smith and the various purchasers and subpurchasers, and between each of them, I do not deem it necessary to make findings as to exact dates of various sales, further than is shown by other findings."

"(60) At the time possession was taken by each subpurchaser under Francis Smith of the respective tracts of land shown above, the said land, while the said title thereto was in Francis Smith, was in actual possession of Francis Smith by and through tenants who were using and enjoying and cultivating said land, all of which was then under fence of substantial character and sufficiently maintained to give notice of the claim thereto by the said Smith, and rendered the possession thereof in behalf of the said Smith exclusive and adverse. The various purchasers went into possession of their respective purchases immediately after the respective dates thereof and there was no break between their possession and that of Francis Smith aforesaid. The timber lots claimed by said defendants respectively as shown above, were not actually fenced, but all of same, except timber lot No. 9, were described in and conveyed by the same deeds conveying to the respective defendants the respective prairie lots as herein shown. Each of said defendants procured from said timber lots wood for use for domestic purposes at their homes on their respective prairie lots, except, however, that Frank Hrnicko did fence substantially all of timber lot No. 23, as stated in the finding in reference to the land claimed by him."

There is no evidence that plaintiffs or any of those under whom they claim were ever in possession of the land, and no assertion or act of ownership adverse to the Opdyke title by plaintiffs' predecessors in title was shown other than the sales by the administrator de bonis non of Davis' estate and the sale by the administrator of C. C. Herbert to E. J. Sandmeyer in 1877 for $50. Notwithstanding the fact that he lived near the land for 18 years after his purchase, and necessarily knew of the possession and claim of defendants under the Opdyke title, E. J. Sandmeyer is not shown to have asserted any claim or exercised any acts of ownership of the land. His estate was administered in the probate court of Colorado county, and this land was not inventoried by his administrator as a part of the estate. All of the parties to the transactions concerning this land between Collins, Opdyke, and Davis, are dead.

We agree with the trial judge that the facts before stated, taken together, are amply sufficient to sustain, if they do not compel, the finding that the title acquired by Davis to the land was acquired and held in trust by him for Opdyke. This being true, the conveyance by the administrator of Davis to Herbert did not pass title to the land, and plaintiffs, who claim under said conveyance, have no title. The probative force of the recitals contained in the several instruments before set out cannot be questioned, but appellants contend that the recitals in said instruments were not admissible in evidence.

[1] The first four assignments presented in appellants' brief complain of the ruling of the court in admitting in evidence the judgment of the probate court of Ft. Bend county rendered in May, 1842, ordering W. B. Aldridge, administrator of the estate of Thomas Davis, deceased, to make title to the land in controversy to George Opdyke, and the deed from said administrator to George Opdyke executed in compliance with said judgment.

It is contended under these assignments that the order and deed above mentioned were void because the probate court at the time the order was made had no jurisdiction to decree specific performance of a contract to convey land, and, said order and deed being void, the recitals therein contained were not admissible in evidence for any purpose. It is true that at the time this judgment was rendered the probate courts of this state had no power or jurisdiction to decree specific performance of a contract to convey land, and the judgment and deed objected to were void as a conveyance of the title, and the recitals in the order and deed, that Davis held title to the land in trust for George Opdyke and George and Andrew Carrico, as shown by an instrument executed by Thomas Davis on June 7, 1838, have not the conclusive and binding force of findings of fact in a judgment within the power or jurisdiction of the court to render. Houston v. Killough, 80 Tex. 296, 16 S. W. 56; Cope v. Blount, 38 Tex. Civ. App. 516, 91 S. W. 615. It does not follow, however, that the recitals in this order and deed are not admissible as circumstances tending to prove the allegations of defendants' answer, that Davis acquired the title to the land for George Opdyke and George and Andrew Carrico, and held it in trust for their use and benefit, and that by an instrument in writing, which had been lost, acknowledged that the superior beneficial title to the land was in said parties.

In the case of Cope v. Blount, supra, in which application for writ of error was refused by the Supreme Court, this court held, while the deed made by an administrator under an order of a probate court made in 1840, decreeing specific performance of a contract to convey land, was void as a conveyance of the title held by the decedent, and that the recitals in such deed were not binding on the heirs, such recitals were admissible as circumstances to show the existence of the contract and the payment by the grantee in the deed to the deceased of the purchase price of the land, and such recitals, considered in connection with other facts and circumstances, all the parties to the transaction being dead, were sufficient to establish the fact that the grantee in the deed held the superior title to the land.

In the case of Schultz v. Lumber Co., 36 Tex. Civ. App. 448, 82 S. W. 353, it was held, under authority of McCarty v. Johnson, 20 Tex. Civ. App. 184, 49 S. W. 1098, that a void record of a deed was admissible in evidence as a circumstance tending to show the execution of a lost deed.

We think the recitals in the order and deed admitted in this case were clearly admissible for the purposes stated.

[2] Complaint is also made under appropriate assignments of error of the introduction in evidence of the petition of Opdyke filed in the probate court, asking for the order directing the administrator to make the deed of conveyance, and reciting the fact that Davis held the title in trust, and also of the deeds from George and Andrew Carrico to George Opdyke, reciting the same facts, and the instruments executed by and between W. C. White and J. W. Collins, and the power of attorney from Collins to Davis, shown in findings of fact before set out. The ground of objection to the copy of the petition that it was only a copy of a copy is not tenable. The original petition was lost, and the only evidence of its contents was the testimony of the witness Matthaei to the effect that several years prior to the trial he had abstracted the filed papers in the Davis estate and had found a petition by Opdyke, asking for an order directing the administrator to make the deed, and had taken a pencil memorandum of the substance of the petition. This memorandum was produced, and the witness permitted to testify that it was a true statement of the substance of the petition. The paper being lost, its contents could be proven

by parol, and the written statements of its contents made at the time of the examination which he could swear was correct was admissible. Southwestern Surety Co. v. Owens, 198 S. W. 662. The objection that the deeds were not admissible as certified copies of records of the state of Louisiana cannot be sustained, because they were not only certified, but examined, copies of the record, shown by the testimony of the keeper of the records to be true and correct copies.

[3] The contention that the recitals in these instruments were inadmissible because they were self-serving declarations, hearsay, and immaterial is answered by a number of the decisions of our courts, among which we cite the following: Cope v. Blount, 38 Tex. Civ. App. 516, 91 S. W. 615; Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033; Frugia v. Trueheart, 106 S. W. 737; Texas Tram Co. v. Givin, 52 S. W. 112; Condit v. Galveston City Co., 186 S. W. 395.

[4, 5] These conclusions require an affirmance of the judgment of the trial court, and render a discussion of the numerous assignments of error presented in appellants' brief, attacking the ruling and findings of the trial court upon the issues of limitation raised by the 60-odd defendants unnecessary. We think, however, there is sufficient evidence to sustain the finding of the trial court that the possession of the whole of the land by Harvin and Smith was exclusive and continuous from September, 1887, until the dates of the respective sales by Smith to the defendants, and that each of the purchasers from Smith who took actual possession of the land purchased by him at the time of his purchase has acquired title by limitation. In the case of these purchasers the limitation began prior to the death of E. J. Sandmeyer, and the minority of the plaintiffs does not affect the bar or interrupt the running of the statute. Most of these purchasers bought two tracts of land, one tract in the prairie for farming purposes and a smaller tract in the timber for the purpose of obtaining firewood and timber necessary in the improvement of the farm. The tracts were not contiguous, most of them being separated by several miles. We cannot agree with the learned trial judge that the possession of the farm tract was sufficient possession under the deed conveying the two tracts to hold the wood tract by limitation, no actual possession being taken by him of that tract. It follows from this that the timber tracts which were sold by Smith before his limitation title of ten years had accrued, and which have not been in actual possession of the purchaser, cannot be held under the claim of title by limitation. Smith's possession ceased when he conveyed, and, the purchaser not having taken possession, the running of the statute was interrupted, and no title by limitation accrued.

It would greatly extend this opinion to discuss the evidence upon the question of possession of the several tracts, and, believing that the evidence overwhelmingly sustains the conclusion that the plaintiffs have no title to the land, we deem it unnecessary to determine in detail the question of limitation as to each of the numerous small tracts of land.

We have considered all of appellants' assignments of error, and none of them, in our opinion, point out any error which requires or would authorize a reversal of the judgment.

The judgment is affirmed.

Affirmed.